Charles C. Johnson

*v.*

The People of the State of Illinois.

1. Witness—*credibility not impeached by ignorance.* The fact that a witness is ignorant on some questions, and is unable to tell in what county he resides, does not show that he is not entitled to credit for truth and veracity.

2. Accessory—*in sale of liquors, by making change.* A person employed in making change for parties engaged in unlawfully selling intoxicating liquors to minors, may be convicted, on indictment, for selling the liquors, as aiding and assisting in the transaction.

3. INTOXICATING LIQUORS—*to minors need not be by a dram-shop keeper.* The statute making it criminal to sell intoxicating liquors to minors without the consent of their parents, etc., is not restricted to the keepers of dram-shops, and therefore it is not necessary to allege, in the indictment, that the defendant, or those for whom he acted in making such sales, was the keeper of a dram-shop.

4. CONSTITUTIONAL LAW—*of the passage of laws—the title.* The constitutional requirement that in order to the proper passage of a bill, with an appropriate title, there must be a favorable vote by a majority of all the members elected to each house, does not apply to the adoption of a different or amended title to the act after the bill has passed. Such new title may be adopted by a majority of a mere quorum.

5. SAME—*expressing object of bill in title.* The constitution does not provide that the subject of a bill shall be specifically and exactly expressed in the title, but any expression in the title which calls attention to the subject of the bill, although in general terms, will be sufficient. The general expression of licenses in a title will embrace a bill relating to licenses for the sale of intoxicating liquors.

6. CRIMINAL LAW—*sentence on conviction under several counts.* Where a defendant is convicted under several counts of an indictment for selling intoxicating liquors, it is erroneous in the judgment to fix the day and hour when the imprisonment shall commence and end under each count. The sentence to imprisonment should be for a specified number of days under each count upon which a conviction is had, the imprisonment under each succeeding count to commence when it ends under the preceding one, without fixing the day and hour of any.

WRIT OF ERROR to the Circuit Court of Lee county; the Hon. WILLIAM W. HEATON, Judge, presiding.

This was an indictment against Charles C. Johnson for selling intoxicating liquor to minors at a fourth of July celebration. It contained twenty-four counts, charging sales to twelve different named persons.

The defendant pleaded not guilty, and a trial was had resulting in a verdict finding the defendant guilty, except as to the seventeenth and eighteenth counts. The defendant moved for a new trial, which was denied, and judgment rendered on the verdict.

Mr. J. V. EUSTACE, for the plaintiff in error.

Mr. JAMES K. EDSALL, Attorney General, for the People.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is first urged, that the evidence fails to sustain a verdict of guilty under the sixteenth count, and that there was no other count under which plaintiff in error could have been convicted of sales actually made by him. Barton swears that plaintiff in error sold to him two glasses of beer, one for himself and the other for one Bitner. Plaintiff in error denies that there was any such sale; that he sold none to him, nor did he sell to any other person. Barton testified that he was eighteen years old.

There was a flat contradiction between the statements of these witnesses, and it was for the jury to judge of their veracity, and having done so, their action will not be lightly disturbed. The jury had the witnesses before them, and could see their manner of testifying, and they, no doubt, in determining the truth, took into consideration all the attending circumstances of the case. Plaintiff in error was deeply interested in the event of the trial, and the prosecuting witness was not, so far as this record discloses. This, of itself, for aught we can know, may have fully warranted the jury in giving credence to the evidence of the prosecuting witness. For anything we can know, the manner of plaintiff in error, when on the stand, may have been such as to satisfy the jury that he was unworthy of belief.

It is urged that the prosecuting witness was ignorant, and hence we should not give him credit for truth and veracity. He seems not to have known in what county Knox's Grove was situated. · This may be true, and still the witness be entirely truthful as to what he does know. Men, with but few, if any, exceptions, are ignorant on some questions, and no one for that reason doubts their veracity. This objection was, no doubt, fully considered by the jury, and they were convinced that he spoke the truth, and we see no reason to say they were mistaken.

It is also urged, plaintiff in error was improperly convicted under the other counts—that he was simply employed to make

28—83D ILL.

change for the six or seven persons who were selling beer, lemonade, candy, etc. He and the others were acting in concert. They were carrying out a common purpose. He aided in making these sales if he gave change when the minors purchased the beer. He to that extent aided and assisted in making these sales. He thereby took an active part, and was one of the actors. It may be he was not as active as others, but nevertheless he acted conjointly with the salesmen. He made no protest against such sales, and being present, and participating in what was done, the jury were warranted in finding that he knew beer was being sold to minors, and that he aided and abetted in such sales.

It is next urged, that there is no averment in the indictment that plaintiff in error, or any person with whom he was acting, was the keeper of a dram-shop. The sixth section of the Dram-Shop Act provides, that "whoever, by himself or his agent or servant, shall sell or give intoxicating liquor to any minor, without the written order of his parent, guardian or family physician, * * * for each offense shall be fined," etc. Now, there is no reference in this section to the keeper of a dram-shop. The language is sufficiently broad to embrace all other persons, as well as the keepers of dram-shops. The manifest object of this section is to prevent the sale or giving of liquors to minors, without the consent of parents, guardians, etc. To hold that it only applied to keepers of dram-shops, would do violence to the design of the General Assembly in adopting this section. It is not necessary to now determine whether a person would incur the penalty of this section by giving it as an act of hospitality at his house, as that question is not before the court. The question here is, whether a person having or not having a license to keep a dram-shop may sell intoxicating drink to minors, and we think it is manifest he can not, without incurring the penalty prescribed by the law.

It is also urged, that the act under which this prosecution was conducted is void, under our fundamental law. It is claimed, that whilst the body of the law was adopted on the

call of the "ayes" and "noes," spread upon the journals of the Senate, by a majority of all the Senators elect, the title to the act only passed by a majority of a quorum. The journals show that twenty-four Senators voted "aye," when it required twenty-six to be a majority of all the members elect. Does, then, the constitution require such a majority to adopt the title to a law? It is not required by the letter of the constitution. According to parliamentary usage, the title is not an essential part of a bill, although under our constitution it seems to be. Usage authorized it, and it was the custom to adopt the title to an act after its final passage.

But our constitution has worked a radical change in this usage, as it provides, art. 4, sec. 13, that " every bill shall be read at large on three different days, in each house, and the bill and all amendments thereto shall be printed before the vote is taken on its final passage; and every bill, having passed both houses, shall be signed by the speakers thereof. No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." This is all of the section which seems to be important in the consideration of the question now before us.

In the case of *Binz* v. *Weber*, 81 Ill. 288, in passing on a similar provision in the constitution of 1848, applicable to private laws, we said, that the validity of the act must depend, under such a provision, upon the title to the bill as it passed both houses, and not on the title to the law after its adoption. What we there said, we think applies to the requirements of our present constitution, as to the adoption of general laws. Hence we regard it unnecessary to further discuss this question.

Is, then, the title by which the bill was passed, sufficient to sustain the law? The title, as the bill passed the Senate, was: "A bill for an act to revise the law in relation to Licenses." For the bill, with this title, twenty-nine Senators voted, and eleven against. After the bill had so passed the Senate, on motion, the title was so changed as to read: "A bill for an act to provide for the licensing of and against the evils arising

from the sale of intoxicating liquors." The change in the title was adopted by "ayes, 24; noes, 11." As thus amended, the bill was sent to the House, where it was constitutionally passed through that body, with the title as amended in the Senate, and was returned to that body, and all the requisite subsequent steps were taken for it to become a law.

On turning to the chapter entitled "License," in the Revised Statutes of 1845, we find that the first eight sections refer to licensing peddlers, auctioneers and merchants. Sections from nine to twenty-one, inclusive, relate to the sale of liquors and licenses therefor. Sections from twenty-two to twenty-eight, inclusive, relate to licensing insurance companies, and for the collection of penalties incurred under the chapter, and the disposition of the money collected for forfeitures. Thus, it will be seen, the law in relation to the license and sale of intoxicating liquors was found in this chapter, and when the bill passed the Senate, with the original title, that title certainly referred to the chapter regulating liquor licenses, and embraced such licenses, and that subject was expressed in the title. It may be that licenses to sell liquor were not specifically named in the title, but it was undoubtedly so expressed as to call the attention of every Senator to the subject matter of the bill, and we have no doubt that this general expression of the subject of the bill answers the constitutional requirement. The provision does not require that the subject of the bill shall be specifically and exactly expressed in the title, hence we conclude that any expression in the title which calls attention to the subject of the bill, although in general terms, is all that is required.

This title called attention to the chapter regulating licenses, and that chapter provided for licensing saloons, and as all the law on the subject was then only found under the title of that chapter, we presume every member of the Senate knew, by the title, that the bill proposed to revise that chapter, and in doing so that it would almost necessarily affect liquor licenses. Had the bill been specific, and the title had proposed to license lawyers, physicians, druggists, or some other occupation, and

the bill had contained the provisions as it was adopted, then this requirement of the constitution would have probably rendered the law inoperative. But it was general, and expressed the subject of the bill generally, but with sufficient distinctness to answer the constitutional requirement, so that if the title must be adopted as is the bill on its final passage, a sufficient title was so adopted when the bill passed the Senate. It does not matter in what manner the title was subsequently changed by the Senate, so the title thus changed called the attention of the House to the provisions of the bill, and the title under which the bill went to the House was specific and certain for that purpose. We have no hesitation in saying the bill was properly and constitutionally passed into a law, and must be enforced.

But the court below erred in the judgment it rendered on the verdict in this case. It fixed the day and hour when the imprisonment should commence under each count upon which plaintiff in error was found guilty. Since a *supersedeas* was granted in this case, it has become impossible that the judgment of imprisonment can be carried into effect, as the time fixed by the court has elapsed and expired: Other contingencies might arise which would render it impracticable to carry such a judgment into effect. The sentence to imprisonment should be for a specified number of days under each count upon which a conviction is had, and the judgment should require that the imprisonment under each succeeding count should commence where it ends under the preceding count, without fixing the day or hour for each or either to commence or end. For this error the judgment of the court below must be reversed, and the cause remanded with directions that the court enter a proper judgment on the verdict.

*Judgment reversed.*