Aden v. Cruse.

---

## ADDE ADEN
### v.
## JULIA ANN CRUSE.

*Dram Shop Act—Strict Construction—Right of Action of injured Person —Sec. 9 Only Applies Against Those Engaged in Liquor Traffic—Treating, Not Within.*

1. The Dram Shop Act being highly penal in its provisions must be strictly construed in keeping with the object of its enactment.

2. Sec. 9 of said act, giving a right of action to one injured in his means of support in consequence of the intoxication, habitual or otherwise, of any person, only applies, when fairly construed as part of the act, against those who are directly or indirectly engaged in the liquor traffic.

3. Said section does not give a right of action against a person not engaged in such traffic, who, as an act of courtesy or politeness, treats another to a glass of intoxicating liquor without any purpose of gain or profit.

[Opinion filed March 9, 1887.]

APPEAL from the Circuit Court of Union County; the Hon. OLIVER A. HARKER, Judge, presiding.

Messrs. CRAWFORD & BUSSEY, for appellant.

.In the case. of Albrecht v. People, 78 Ill. 510, it is declared that every section of the Dram Shop Act is aimed at dram shops and those who keep them, and that its provisions do not extend to those who only treat a friend as an act of hospitality or friendship.

"The statute gives the wife a right of action only in cases when, by the selling, liquor to a drunken husband, the wife has been injured thereby in person or property or means of support." Fentz v. Meadows, 72 Ill. 542. We believe this to be the true intent of the law. The Legislature in passing this act evidently had in mind the *business* of dealing in liquors. The statute throughout refers to the business. The words "selling or giving away" were evidently intended, taking this entire statute into consideration, to apply to gifts or sales at such places, and by those engaged (legitimately or otherwise) in such business. The provision as to gifts of liquor is, we think, the outgrowth of the necessity of providing against sham sales and devices for evading the penalties of these liquor laws, and were only intended to affect those who make commerce of intoxicating liquors, and provide places and means for persons to supply themselves with such liquors. In this case the treating of Cruse by defendant was a mere incident of their friendly meeting on that occasion. There was nothing sinister or mercenary about it. He could have had no other object than that of cementing the friendship between himself, Cruse and Mowery by a practice common among men, as was the case with Cruse in treating Aden and Sensmeyer. Legally he was guilty of no wrong and no negligence.

In all the cases heretofore brought under the provisions of the Dram Shop Act, we believe the defendants were dealers in or manufacturers of intoxicating liquors and therefore amenable to the act, as it was for the regulation of their business (and for no other purpose) the act was passed. In

this case the defendant was not a dealer in or manufacturer of liquor and not connected with the business in any manner.

Messrs. W. S. DAY, P. E. HILEMAN and D. W. KARRAKER, for appellee.

Appellant's counsel claim that Sec. 9 of the Dram Shop Act was not intended to reach any persons except those engaged in the liquor traffic. It would be sufficient answer to the logic of this objection to ask the question, what difference is it to appellee whether her husband's death was caused by liquor given to him by *friends* or by a saloon keeper? But it is answered legally by referring to the statute itself. The 9th section commences with these words: "Every husband, wife, child, parent," etc., and in naming who the recovery could be had against, says : "Against *any person* or *persons* who shall, by selling or giving intoxicating liquors, have caused the intoxication in whole or in part," etc. The wording of Sec. 9 is similar to the wording of Sec. 6, with reference to sales to minors, which has been construed by the Supreme Court in case of Johnson v. People, 83 Ill. 431, where the word "whoever" is construed to apply to others than dramshop keepers, and the word "whoever" can not be said to be more comprehensive than the words "any person" as used in Sec. 9; this case seems to entirely overrule the case of Albrecht v. People, 78 Ill. 510.

Aden went seven and a quarter miles to get to Mill Creek. He took a jug of liquor along. Appellant claims that his business was to go to Elco with Charley Sackett, but the first thing he does is to call for Cruse and get a stable and unhitch his horses and take the harness off of them and then "treat the boys" and go to the voting place. This was general election day. Appellant himself says: "I stayed around awhile and told the boys that I was for Frank Neibauer and the Stock Law. After being with Cruse and others around there several hours and getting Cruse thoroughly drunk, he leaves him under a tree about 100 yards from Mill Creek bridge, and drives back to Dongola without going to Elco or transacting any business with Sackett. He left his own precinct and drove six

miles from his voting place in order to " cement the friendship between himself and Cruse and Mowrey" and declare himself for "Frank Neibauer and the Liquor Law." He was there on general election day at the polling place with liquor, giving it away, in violation of the laws of the State of Illinois, and there was no friendly treating about it. It was an electioneering scheme.

GREEN, J. Appellee brought suit to recover damages for injury to her means of support, alleged in the declaration to have been caused by appellant giving intoxicating liquor to her husband, whereby he became intoxicated, and being in a state of intoxication so caused, and by means thereof being in such mental and physical condition as to be unable to ride, guide and manage his horse, he fell off his horse upon the ground, and thereby received fatal wounds and injuries, from which he in eight days afterward died, etc. The declaration concludes, " and by force of the statute in such case made and provided, an action has accrued to her against defendant, for the recovery of her said damages in the premises, and therefore she brings her suit, etc." The jury found defendant guilty, and assessed plaintiff's damages at $800. Defendant's motion for a new trial was overruled. The court rendered judgment on the verdict, to reverse which judgment this appeal was taken. It appears from the evidence, appellant and Cruse, the deceased, were farmers and friends. About 11 o'clock in the morning of election day, in November, 1884, appellant drove into the village of Mill Creek, inquired for Cruse of a person who was a witness on the trial, and who found Cruse, came with him to appellant, and the latter asked Cruse to get him some place where he could put up his team. Cruse did so, and together with the witness rode with appellant in his buggy to the barn, and after putting up the team there appellant invited the two to drink with him out of a flat bottle or flask containing less than a pint of apple brandy; all three drank, and after talking together there a short time, upon the invitation of appellant they drank again, finishing the contents of the flask. These two drinks were the only ones

given Cruse by appellant. Cruse was not then intoxicated. The three then left the barn and went to the polls together. It further appears Cruse was in company with other persons at Mill Creek at an early hour the same morning, when whisky was being drank, and between 8 and 9 o'clock same morning he had a quart bottle of whisky, and a witness upon his invitation took a drink out of it, Cruse remarking he had got the whisky the day before to treat his friends. Shortly after 12 o'clock, same day, Cruse again met appellant and another person, invited them to go with him to the barn where the team of appellant had been left, which they did, and there Cruse produced a quart bottle partly filled with whisky, and each took a drink out of it, upon his invitation. This was the only drink taken there. Cruse was then intoxicated. The team was then hitched to the buggy, all three got in, appellant drove out of the village about three quarters of a mile, turned around, came back, and Cruse and witness left the buggy and separated from appellant, who drove home and saw them no more. Shortly after Cruse got out of the buggy he said the liquor had made him sick, and vomited, after which he said he was better and proposed to go home. His horse was then brought, he was assisted to mount it and rode off evidently intoxicated. After riding a short distance his horse started and ran away, and either stumbled or stepped on the halter strap. Cruse was thrown or fell upon the ground, and was so injured as to cause his death within a few days.

We omit the evidence concerning the support furnished appellee by the deceased, and touching his habits and ability to work, as also the property he left, but deem the evidence sufficient to show appellee was injured in her means of support by the death of her husband; and we think also, that the jury might fairly infer from the evidence the two drinks given deceased by appellant contributed to cause the intoxication, and that such intoxication was the proximate cause of the accident which resulted in the death of Cruse; nor were the damages assessed excessive; but there yet remains to be decided the graver question. Had appellee, under the statute, upon the facts proven, a right of action against appellant, he

not being a dram-shop keeper, or engaged directly or indirectly in the traffic of selling intoxicating liquor, at the time he gave Cruse the two drinks? Such right of action appellee claims is given by this 9th section of the Dram Shop Act. " Every husband, wife, child, parent, guardian, employer or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall by selling *or giving* intoxicating liquors have caused the intoxication in whole or in part of such person or persons, and any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, or who, having leased the same for other purposes, shall knowingly permit therein the sale of any intoxicating liquors that have caused in whole or in part the *intoxication* of any person, shall be liable severally or jointly with the person or persons selling or giving intoxicating liquors as aforesaid, for all damages sustained, and for exemplary damages,   *   *   *   and the unlawful sale or giving away of intoxicating liquors shall work a forfeiture of all rights of the tenant under any lease or contract of rent, upon the premises where such unlawful sale or giving away shall take place   *   *   *   ." It has not been generally understood by the profession in this State that this section was intended to give a right of action to recover damages for the injuries mentioned, against others than dram shop keepers, their agents or servants, and those owning premises where intoxicating liquors were sold, and for this reason, probably, no suit has been brought precisely similar in character to this, and taken up to the Supreme Court for final determination. Hence we have not the benefit of the light which an opinion of that court would give us in a case exactly like this, but must give a construction to this section justified by the title of the act, the apparent purpose of its provisions, and the language used in said Sec. 9. We find the title of the act is " Dram Shops," and it is further entitled "An act to provide for the

Aden v. Cruse.

licensing of, and against the evils arising from the sale of intoxicating liquors." The title would indicate the traffic in liquor as carried on in dram shops to be the subject-matter intended to be regulated and controlled by this act; and the several sections thereof, we think, carry out such purpose. Sec. 1 defines a dram shop, and what is meant by intoxicating liquors. Sec. 2 prescribes the penalty for selling without a license. Sec. 3 how a license may be granted. Sec. 4 the form of license, rights under it, and for its revocation. Sec. 5 requires dram-shop keepers to give a bond, fixes the amount and conditions of it, and provides for suit thereon. Sec. 6 provides for the punishment of "whoever by himself, his agent or servant," shall sell or give intoxicating liquor to a minor. Sec. 7 declares places to be nuisances, where intoxicating liquors are sold in violation of the act, provides for the punishment of those keeping such, and for the abatement thereof. Sec. 8 provides that every person who, by the *sale* of intoxicating liquor, with or without license, shall cause the intoxication of any other person, shall pay a reasonable compensation and $2 per day additional, to any one taking charge of, and providing for such intoxicated person. Sec. 10 provides what property shall be liable to execution for the payment of *any judgment for damages and costs* recovered against any person in consequence of the *sale* of intoxicating liquors *under Sec. 9,* and for proceedings to enforce payment of such judgment. Sec. 11 gives jurisdiction to Justices in certain cases. Sec. 12 provides for indictment. Sec. 13 provides, "The *giving away* of intoxicating liquors, or other shift or device to evade the provisions of this act, shall be held to be an *unlawful selling.*" Sec. 14 relates to indictment and evidence. Sec. 15 provides that it shall be no objection to a recovery under the act that the offense is punishable under city, village or town ordinance. Sections 16, 17 and 18 comprise the "Harper Act," and need not be here repeated. The sections cited seem to have been so worded as to exclude doubt that the scope and purpose of the act was limited to providing in what manner the traffic in intoxicating liquors would be permitted, who might engage in such traffic, under

Aden v. Cruse.

what conditions and restrictions, the penalties incurred for a violation of the provisions of the act, and the mode of enforcing them, also providing a remedy for injuries resulting from the sale or gift of intoxicating liquors by dram-shop keepers, their agents or servants, in the course of business, and the 9th section fairly construed as a part of the act does not include persons other than those engaged in the traffic, or one who sells or gives away intoxicating liquor without license for some profit or personal advantage, as persons against whom a right of action is given. After giving a right of action severally or jointly against "any person or persons selling or *giving* intoxicating liquors causing intoxication, etc.," and in connection therewith, it is provided, " the person who rents *the premises* with knowledge that intoxicating liquors are to be sold therein, or knowingly permits therein the sale of such liquors that have caused the intoxication of any person in whole or in part, shall be severally or jointly liable with the *person* or *persons* selling or giving intoxicating liquors *as aforesaid*, for all damages, etc." This provision defines the person or persons with whom the landlord or owner of the premises is made jointly liable to be the person or persons selling or giving intoxicating liquors *in the premises* where the sale of such liquors is carried on, and against whom a right of action is given in said section, and plainly indicates the person or persons intended are those only engaged in said traffic; but continuing, the section further provides, " the unlawful selling *or giving away* of intoxicating liquors shall work a forfeiture of all rights of the tenant under any lease or contract, upon the premises where such unlawful sale or *giving* away shall take place." The "giving" in this part of the section mentioned is evidently ( like the same word when used in the first part of Sec. 9 ) intended to mean, by one engaged in the traffic of a dram shop, because no other could be a tenant guilty of unlawful sale or giving away, whereby such forfeiture could be incurred. Sec. 10 also supports our construction. It provides what property shall be liable to execution for the payment of a judgment recovered against any person under Sec. 9, and to satisfy such judgment subjects to sale the premises

Aden v. Cruse.

used or occupied for the sale of intoxicating liquors by the person against whom such judgment is rendered. Can it be fairly insisted this section does not further define the person intended by Sec. 9 to be made liable for damages resulting from the sale or giving intoxicating liquors, to be a person engaged in the traffic of a dram shop or who, as a part of his business, sells intoxicating liquor, as for instance a druggist? Sec. 13 may also properly be referred to in this connection; it provides, " The giving away of intoxicating liquors, or other shift or device to evade the provisions of this act, shall be held to be an unlawful selling. " As used in this section the word "giving," is not to be construed as meaning the mere act of giving away intoxicating liquors by any person, as such construction would leave the context " or other shift or device to evade the provisions of this act," without significance; it means the act of giving in a manner to evade the law, by one not having a license—for instance, giving away the liquor, and at the same time selling some valueless article, taking pay for the latter only—and applies solely to those engaged in the liquor traffic. The Legislature surely did not intend that a person not engaged in that business, because he did not have a license, should become liable to fine and imprisonment, as for unlawful selling, for giving away a glass of wine or liquor to a friend or guest, and if the meaning and application we have given the word as used in Sec. 13 is correct, it would seem, for a similar reason, to have a like meaning and application when used in Sec. 9 ; there the phrase is " selling or giving." If others than dram-shop keepers, their agents and servants, were intended to be included, the word " selling " is superfluous. The evident purpose for which the word " giving " is inserted is to prevent a person engaged in the traffic from escaping the liability by resorting to the device of giving the intoxicating liquor, and as part of the same transaction selling some other thing and receiving pay for it; furthermore, if Sec. 9, by a fair construction, embraces all persons, and is not restricted in its operation to those engaged in the liquor traffic and *"giving away intoxicating liquor"* by any person, is to be held an *unlawful selling* under

Sec. 13, a tenant of a dwelling house, who, in the presence of, and without objection of his landlord, in such house, gives (as in this case) two drinks of intoxicating liquor to a friend, which does not produce intoxication, and the latter shortly after leaves and drinks elsewhere until intoxicated, and injures a person by reason of such intoxication, the tenant and landlord would be jointly liable to the injured party, if a jury should find the two drinks contributed to such intoxication, and in such case the tenant would be liable also to a forfeiture of his lease and eviction from the leased premises, the landlord would become so liable for *permitting* the giving of the drinks in the leased premises, and the tenant would incur the additional penalty of forfeiture and eviction, for the *unlawful giving away* of intoxicating liquor. We do not think the Legislature intended Sec. 9 to be given such construction, or intended the penalties and provisions contained in the Dram Shop Act, to apply to persons not directly or indirectly engaged in the liquor traffic, or one who for a consideration, pecuniary or otherwise, gives intoxicating liquor to another to drink, and if this is so, the right of action given by said section to one injured in her means of support, in consequence of the intoxication, habitual or otherwise, of any person, is not intended to be given against a person who, in his own house or elsewhere, as an act of courtesy or politeness, treats a friend to a glass of intoxicating liquor, without any purpose of gain or profit. However pernicious and prolific of evil the custom of treating, as it is termed, may be deemed, we have not the power to legislate in respect thereto for the purpose of suppressing such custom, and in the absence of a statute giving a right of action against one who treats another, or providing means for preventing such act, we can not effect such purpose by giving a wrong or unreasonable construction to a law in force. We have said no precisely similar case to this has been before our Supreme Court, but in the case of Albrecht v. The People, 78 Ill. 510, the defendant was found guilty of a violation of the 6th section of the Dram Shop Act, and appealed from the judgment rendered against him. It appeared that he carried on a brewery but kept no dram shop.

Aden v. Cruse.

One Dewey, a minor, called with others to see defendant about some business, and all were invited by defendant to drink beer furnished by him—they accepted the invitation and all drank. The court in the opinion say, this was not an act the statute intended to, punish, and was a mere courtesy which the law was not designed to reach, and further say, "the statute is highly penal in its provisions, and according to well recognized rules, must be construed strictly, keeping in view the great central object the Legislature had in its enactment, and the evils to be prevented. The title of the act is Dram Shops, and every section is leveled against them, not with a view to their suppression, for they are licensed to sell intoxicating liquors. The provisions of the act are aimed at such." The judgment below was reversed, and no member of the court dissented. The construction we have given this act, is in harmony with the views expressed in that opinion, and is not in conflict with the decision or opinion in Johnson v. People, 83 Ill. 431. Johnson was indicted under the 6th section for selling to minors, and set up in defense that he sold no liquor, but only assisted in making change for those who did sell; in the opinion it is said, the language of Sec. 6 is sufficiently broad to embrace all other persons as well as the keepers of dram shops, and that defendant was present assisting in selling, but it is also said in the opinion, "it is not necessary to now determine whether a person would incur the penalty by giving liquor as an act of hospitality at his own house—that question is not before the court; the question is, whether a person having or not having a license to keep a dram shop, may *sell* intoxicating liquors to minors, and we think it is manifest they can not, without incurring the penalty provided by law." This decision does not overrule the Albrecht case, or conflict with the construction we have given the 9th section and as such construction would necessarily preclude appellee from maintaining her action against appellant. This opinion need not be lengthened by a criticism of the instructions excepted to, and the judgment of the Circuit Court must be reversed.

*Reversed.*