## MATTER OF SCHNEIDER FOR WRIT OF HABEAS CORPUS.

THE POWER "to license, tax, regulate and restrain bar-rooms and drinking shops," conferred by the charter of the city of Portland upon the city council, is a power to "license," &c., the business of keeping or conducting a place of that description.

A PLACE is a bar-room or drinking shop within the meaning of such provision, which is used or occupied for the purpose of traffic in liquors to be drunk on the premises, its legal character being determined by the business for which it is occupied.

AN ORDINANCE, therefore, prohibiting the sale, barter or delivery, without license, of wine, spirituous or malt liquors "to be drunk on the premises" owned or occupied by the dealer, is fully warranted by the power conferred.

Points decided.

A PROVISION in the form of bond prescribed by such ordinance that the obligor shall comply with "all other ordinances of said city" must be construed with reference to the subject upon which the council was acting at the time the ordinance was adopted, and restricted accordingly. In this instance, only such ordinances as relate to the licensing of barrooms and drinking shops are included in such provision.

THE LIMITATIONS as to mode and measure of punishment for violation of city ordinances found in the charter, do not affect the power of the city government to require such bond, or determine the amount of its penalty.

THE CITY COUNCIL has the power under the charter to require such bond, and the amount and conditions thereof are limited only by the requirement of reasonableness.

APPEAL from Multnomah County.

*Drake & Stephens* and *N. B. Knight,* for appellant.

*R. Williams,* contra.

## APPLICATION FOR A WRIT OF HABEAS CORPUS.

Section 37 of the charter of the city of Portland contains the following among other provisions:

"§37. The council has power and authority within the city of Portland—

"5. * * * To license, tax, regulate and restrain barrooms, drinking shops, &c.; *Provided,* that no law or part thereof authorizing any tribunal or officer of Multnomah county to grant tavern or grocery licenses, shall apply to persons vending liquor within the city of Portland.

" 36. To provide for the punishment of a violation of any ordinance of the city by fine or imprisonment, not exceeding three hundred dollars, or ninety days, or both, or by a forfeiture or penalty not exceeding three hundred dollars, and for working any person sentenced to such imprisonment upon the streets, public squares, workhouse or house of correction during the term thereof, and to provide for

the punishment of any person sentenced to imprisonment who shall refuse to work when ordered.

" §38.    The power and authority given to the council by section 37 can only be enforced or exercised by ordinance, unless otherwise expressly provided; and a majority of the council may pass any ordinance not repugnant to the laws of the United States, or of this State, necessary or convenient for carrying such power or authority, or any part thereof, into effect."

The ordinances involved in this proceeding were passed under the authority of these provisions and appear in full in the complaint upon which the appellant was arrested and held in custody, the body of which is as follows:

" The said H. Schneider is accused by this complaint of violating the following ordinances of the city of Portland, which said ordinances were duly passed by the common council of said city and approved by its mayor on the dates attached thereto:

## "ORDINANCE NO. 3720.

"AN ORDINANCE to provide for licensing bar-rooms and drinking shops, and to prohibit the sale of liquor without license.

" *The city of Portland does ordain as follows:*

"SECTION 1.    No person or persons shall, in this city, directly or indirectly, in person or by another, sell, barter, or deliver, or knowingly permit to be sold, bartered or delivered for, or on his or their account, any wine, spirituous or malt liquors to be drank on the premises owned or occupied by him or them without first obtaining a license therefor in the manner hereinafter provided, and every person to whom such license shall be granted shall pay into the city treasury the sum of two hundred ($200) dollars per quarter

year; provided that a license may issue to sell beer and malt liquors, for the sum of fifty ($50) dollars per quarter, subject to the same conditions and restrictions provided by the ordinances of the city in regard to licenses to sell liquors, and the keepers of bar-rooms and drinking shops; and any person who shall violate the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof before the police court shall be punished by a fine of not exceeding the sum of two hundred dollars, and not less than fifty dollars, or imprisoned in the city jail not less than twenty-five (25) days nor more than ninety (90) days, or both, at the discretion of the court.

"Sec. 2. Any keeper of a bar-room or drinking shop who shall permit any breach of the peace or disturbance of public order or decorum by noisy, riotous or disorderly conduct on the premises, when it is in his power to prevent the same, or who shall sell or give any intoxicating liquor to any person already intoxicated, or to any person under the age of legal majority, shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined not less than twenty-five ($25) or more than fifty ($50) dollars, or be imprisoned in the city jail not less than ten (10) nor more than twenty (20) days, and shall forfeit the license to such bar-room or drinking shop.

"Sec. 3. Any keeper of a bar-room or drinking shop who shall permit or employ any woman to act as waitress or bar-tender, or to sing or dance, or serve in any other capacity in such bar-room or drinking shop, shall be deemed guilty of misdemeanor, and upon conviction thereof, be fined not less than twenty-five ($25) nor more than fifty ($50) dollars, or be imprisoned in the city jail not less than ten (10) nor more than twenty (20) days, and shall forfeit the license to such bar-room or drinking shop.

" SEC. 4. Any keeper of a bar-room or drinking shop, or any employe therein, who shall on the day of any general or city election held under the city charter or laws of this state or of the United States, sell, give, or otherwise dispose of intoxicating liquors to any person during the voting hours of any such election, shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined not less than one hundred ($100) dollars for each offense, or be imprisoned in the city jail not less than twenty (20) days, and shall forfeit the license to such bar-room or drinking shop.

" SEC. 5. Before any license shall issue, as provided in this ordinance, the applicant shall file with the auditor the receipt of the treasurer for the amount of such license.

" SEC. 6. Ordinance No. 3340 and all ordinances in conflict herewith are hereby repealed.

" Passed the common council March 7, 1883.

" M. F. SPENCER,

"Auditor and Clerk.

"Approved March 8, 1883.

"J. A. CHAPMAN, Mayor."

## " ORDINANCE NO. 3744.

"AN ORDINANCE amending sections one (1) and five (5) of ordinance No. 3720, entitled 'an ordinance providing for licensing bar-rooms and drinking shops, and to prohibit the sale of liquors without license.'

" *The city of Portland does ordain as follows:*

" SECTION 1. That sections one (1) and five (5) of ordinance No. 3720, entitled 'an ordinance providing for licensing bar-rooms and drinking shops, and to prohibit the sale of liquors without license,' be amended to read as follows:

" SEC. 1. No person or persons shall, in this city, directly or indirectly, in person or by another, sell, barter or

deliver, or knowingly permit to be sold, bartered or delivered, for or on his or their account, any wine, spirituous or malt liquors, to be drunk on the premises owned or occupied by him or them, without first obtaining a license therefor in the manner hereinafter provided, and every person to whom such license shall be granted shall pay into the city treasury the sum of five hundred dollars per annum, payable quarterly. Any person who shall violate the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction thereof before the police court, shall be punished by a fine of not exceeding the sum of two hundred dollars, and not less than fifty dollars, or imprisoned in the city jail not less than twenty-five (25) days nor more than ninety days, or both, at the discretion of the court.

"SEC. 5. Before any license shall issue, as provided in this ordinance, the applicant shall file with the auditor the receipt of the treasurer for the amount of such license within five (5) days of the beginning of each quarter. And also a bond with two good and sufficient sureties, to be approved by the mayor and president of the council, and conditioned as is set forth in the following form:

"Know all men by these presents, that............as principal and............and............as sureties, all of the city of Portland, county of Multnomah, state of Oregon, are held and firmly bound unto the city of Portland, in the sum of five thousand (5,000) dollars lawful money of the United States, for the payment whereof well and truly to be made, we and each of us, jointly and severally, bind ourselves, our heirs, executors and administrators firmly by these presents.

"Sealed with our seals and dated this....day of.........A. D. 188..

"The condition of the above obligation is such that

---

---

whereas, the above bounden.....................ha...
this day made application for a license to sell wine, spirit-
uous or malt liquors on the premises known as...........
street, under the provisions of ordinance No.....entitled
'an ordinance providing for licensing bar-rooms and drink-
ing shops, and to prohibit the sale of liquors without li-
cense,' which license is about to and will be issued upon the
approval of this bond. Now, if the said...........shall
keep an orderly house and in all things comply with the
provisions of said ordinance No....and all other ordinances
of said city, from the date hereof until the....day of......
188.., then this obligation to be void, otherwise to remain
in full force and virtue.

.......................[L. S.]
.......................[L. S.]
.......................[L. S.]

" Signed and sealed in the presence of )
............. ............... 
.... ..................... )

"STATE OF OREGON, ) ss.
    County of Multnomah. }

" I, ............, and I, ............, do solemnly
swear, each for himself, that I am a freeholder in the city
of Portland, county of Multnomah, state of Oregon, and
am on the city assessment roll for one thousand five hun-
dred dollars clear of indebtedness, and that I am worth the
sum of five thousand dollars over and above all debts and
liabilities and property exempt from execution, and that I
am not a dealer in wine, spirituous or malt liquors, and that
I am not a surety upon any other bond of a similar charac-
ter, and that I am personally acquainted with the principal

---

Complaint.

---

named in the bond, and that I know......to be of good moral character.   So help me God.

.......................

.......................

"Subscribed and sworn to this....day of.......A. D. 188..

.......................

"Auditor and Clerk.

" SEC. 2.   All ordinances and parts of ordinances in conflict herewith are hereby repealed.

" Passed the common council April 4, 1883.

"R. B. CURRY,
"Auditor and Clerk.

"Approved April 6, 1883.

" J. A. CHAPMAN, Mayor.

"As follows:

" The said defendant, H. Schneider, being then and there the keeper of a drinking shop at Albany Brewery saloon, in the city of Portland, county of Multnomah and state of Oregon, did on the 16th day of April, 1883, at said place, the same being then and there occupied by him, to be drunk on the premises, sell, by his bar-tender, Heinrich Swartz, whose true name is unknown, to Ed. Fallond, spirituous liquor, to-wit: one gill of gin, for ten cents, without having first obtained a license therefor in the manner provided in the aforesaid ordinances, whereby the peace and quiet of said city was disturbed, contrary to the ordinances in such case made and provided.

" Dated, Portland, Oregon, this 17th day of April, 1883.

" S. W. RICE,
" City Attorney."

By the Court, WATSON, C. J.

LORD, J., concurring.

This is an appeal from an order of the circuit court refusing to discharge the appellant from custody upon a writ of habeas corpus directed to the chief of police of the city of Portland.

It is impossible to notice all the questions raised in the argument of the case, in an opinion of reasonable length, and I shall therefore restrict my examination to such as appear fairly open to controversy.

That the legislature has the power, under the state constitution, to invest the subordinate municipal governments with control of the traffic in intoxicating liquors, is not a debatable question.

The only questions of real difficulty presented in the record arise upon the construction of the several provisions of the charter conferring power over the subject upon the city council, and the ordinances adopted by the council in attempted pursuance of the power conferred.

1. What is the power "to license, tax, regulate and restrain bar-rooms and drinking shops," bestowed upon the council by subdiv. 5 of section 37 of the charter?

The terms " bar-rooms " and " drinking shops " are obviously used here to signify the business of conducting or keeping such places. They are susceptible of no other reasonable interpretation, in the connection in which they are found in this provision of the charter.

It is such business, therefore, that the council is empowered "to license," &c.

In this view, the legal character of the place would be determined by the nature of the business for which it is occupied.

The council, then, in requiring license to be taken out before engaging in the business of disposing of liquors to be drunk on the premises owned or occupied by the dealer, simply exercised its rightful authority; for the business of disposing of liquors to be drunk on the premises where disposed of, is identical with the keeping of a "bar-room," or "drinking shop," and every place where liquors are disposed of to be drunk on the spot is a "bar-room," or "drinking shop," within the meaning of the charter.

There can be no essential difference between the original meaning of the word "tavern" and the word "bar-room," or "drinking shop," as used in the charter. And a "tavern" has been judicially defined to be "a house licensed to sell liquors in small quantities to be drunk on the spot." (*State* v. *Chamblyss*, 34 Amer. Decis., 593.)

And such is doubtless the common understanding of the terms "bar-room" and "drinking shop," and the sense in which they are employed in the charter.

It is true the language of the ordinance is somewhat broader, covering any sale, barter or delivery, of the liquors specified, to be drunk on the premises, without license; but a reasonable construction, in view of the particular subject before the council at the time the ordinance was adopted, justifies the restriction I have placed upon it. (*Albrecht* v. *The People*, 78 Ill., 510.)

The *proviso* to subdiv. 5 of §37 of the charter also justifies the inference that the legislature intended to confer a large measure of control over the traffic in liquors upon the local government. It is found in the same subdivision of the section by which the power "to license," &c., is given, and declares that "all persons vending liquors within the city of Portland" are exempted from the necessity of taking out license under the general laws of the state.

I think, therefore, the ordinance fairly conforms to the power given by the charter in this respect.

2.    The objection that the ordinance is ambiguous as to the time when the license fee is to be paid, is not maintainable.    It is to be paid each quarter, and the term "quarter" in this connection can only mean the quarter of the year for which the applicant desires a license.    And inasmuch as he may not engage in the proposed business without a license, it is apparent the "five days of the beginning of each quarter" within which he is required to file the receipt of the city treasurer, for the amount of the license fee, with the city auditor, who is authorized to issue the license, must be the five days immediately preceding the beginning of such quarter.

3.    A question is made as to the power of the city council to pass an ordinance requiring a bond from an applicant for a license to keep a "bar-room" or "drinking shop" within the city limits.

I think I may safely assume the existence of the power under the authority to "regulate and restrain bar-rooms and drinking shops," unless some limitations can be implied from other parts of the charter.    There is no express limitation, and the authority to "regulate and restrain," uncontrolled by other provisions, would clearly give the power to require the bond.    In fact the requirement of a bond from the applicant for license to engage in such business, is universally recognized as a proper and legitimate measure of regulation and restraint wherever such power is to be exercised.    And as the state exercised the power in the same manner until it withdrew its jurisdiction in favor of the city government, there seems good ground for concluding that the legislature intended the latter should enjoy the power in the same ample and efficacious measure.

The opposite view rests upon deductions from the provisions of subdivision 36 of §37 of the charter prescribing the mode and measure of punishment for violations of city ordinances.

These provisions unquestionably limit the power of the council to provide punishment for the offense of violating such ordinances. But the penalty in a bond of this character, which the obligor may become liable to pay on breach of its conditions, is not either technically or in fact a punishment for a violation of any city ordinance. If the council passes an ordinance requiring a bond as one of the conditions of granting license, and a person engages in the business for which the license is required without first obtaining it, he might be punished for a violation of the ordinance and the limitation as to punishment would apply. But if he gives the bond and procures the license, subsequent breaches of the conditions of the bond would not amount to violations of the ordinance. He would simply render himself liable on his contract; and the real question must be, not as to the power to punish, but as to the power to exact the obligation by contract, as a legitimate measure of regulation or restraint.

Now, is it to be inferred from the fact that the legislature has limited the amount which the council may impose as a punishment for a violation of a city ordinance, that it intended to withhold the power to require a bond, because a person might thereby incur a liability to pay an amount greater than could be imposed as a punishment? If this reasoning is admissible, no bond can be exacted in any case under the authority given to the city government, for the mode as well as measure of punishment is prescribed, and one operates as a limitation just as much as the other. Certainly, no one will contend that the council has any au-

thority under the provisions relating to punishment for violations of city ordinances, to require any bond or other security. A bond to secure in advance the payment of penalties for violations of city ordinances which may happen subsequently, and not warranted as a measure for securing the performance of some special or peculiar duty to the public, would be additional punishment in itself and plainly not within the authority to punish conferred by the charter. And if a bond for this purpose might be exacted from one it might from all; and, indeed, no ordinance requiring it of any particular person or class only could, in any event, be deemed valid.

How, then, can the city government insure the performance of public duties on the part of its officers and citizens in those positions of special trust and power where dereliction would be cheaply purchased at the amount which might be exacted as punishment for the violation of city ordinances, if no security in any greater amount can be required?

The only principle which will sustain the objection to the power of the council to require a bond in such cases. proceeds to the extent of denying its authority to create an obligation or require the execution of a contract, by ordinance, which may impose a liability in excess of the amount which may be exacted as a punishment for the violation of such ordinance. But if there is a sufficient consideration for the obligation or contract, as there is in cases of this character, I am unable to perceive any reason why the extent of liability upon it should be affected in any manner by the provisions in relation to punishment for violations of the ordinance creating the obligation or requiring the execution of the contract. Punishment for a violation of a city ordinance under the charter cannot exceed three hundred dol-

lars and ninety days imprisonment. The amount to be paid for license to keep a "bar-room" or "drinking shop" must be established by ordinance. If the ordinance requires a greater sum to be paid for license than could be exacted as punishment, if a person should proceed to engage in such business without obtaining license, would it therefore be void? Has the amount of such punishment any relation to the amount which may be required for the license? The bond required as a measure of regulation or restraint, stands on the same footing as the license fee in this respect.

If the council has the power under the charter to require the bond as a proper measure of regulation or restraint, then the only limitation upon its amount or conditions is that of reasonableness, and the provisions as to the amount of punishment which may be imposed for a violation of the ordinance exacting it, can have no bearing.

There is no essential connection or correspondence between the legal obligation of an ordinance and the penalty for its violation. If the latter is insufficient, the ordinance may be ineffectual, but is not therefore invalid.

In the case at bar, the requirement of the bond is part of the obligation of the ordinance, and quite distinct from the penalty provided for its violation. (*State* v. *Whitener*, 23 Ind., 124; *Whalin* v. *City of Macomb*, 76 Ill., 49.)

I think the power of the council to require a bond from the applicant should be sustained.

4. It is claimed that the provision in the form of bond given in §5 of the ordinance for the observance of "all other ordinances of said city" is illegal and renders the entire ordinance void. The claim is put upon a literal construction of the provision. If this were the proper construction, I

should not deny the effect contended for. A requirement
to observe all other ordinances of the city would be unequal,
oppressive and void; and as the bond required by the ordi-
nance in this instance is an essential part of the considera-
tion for granting the license—as much so as the license fee
itself—the manifest intention of its framers would be vio-
lated by permitting the license to issue on any other or dif-
ferent terms. An ordinance thus void in part is wholly
void. The good part is incapable of separation from the
bad. (*Austin* v. *Murray*, 16 Pick., 121; *Warren & others*
v. *Mayor & Aldermen of Charlestown*, 2 Gray, 84.)

But the rule of construction with reference to the subject
of the ordinance before considered, applies here with equal
force.

The subject before the council being the licensing of
bar-rooms and drinking shops, as to the title as well as the
body of the ordinance, abundantly shows, the expression,
"all other ordinances of said city," must be held to mean
all other ordinances on that subject, and therefore not in-
validating the ordinance. (*State ex rel. Kennedy* v. *Mc-
Gary*, 21 Wis., 502.)

5. The validity of the ordinance is also assailed on the
ground that its requirements as to the qualifications of sure-
ties are unreasonable and oppressive. Under the power to
restrain, it has been held that a license fee may be exacted.
(*Smith* v. *The City of Madison*, 7 Ind., 86.) And if a
fee may be required under this power, why not a bond with
sureties possessing certain prescribed qualifications?

The word "restrain," appearing as it does in immediate
association with the word "regulate" in the charter, must
be accorded some additional effect. And even if the re-
quirements as to qualifications of sureties could not be con-

sidered as justified by the power to regulate, it is by no means so clear that they cannot be sustained under the power to restrain. Judgment affirmed.

WALDO, J., dissenting.