MAYOR & COUNCIL OF LEESBURG *v.* PUTNAM *et al.*

1. Neither the "general welfare clause" usually found in the charters of towns and cities, nor the special power "to license and regulate the management of barrooms, saloons," etc., includes the power to run and operate barrooms and saloons, or to otherwise embark the municipal corporation having authority to exercise such powers only, either in the business of selling liquor, or in any other commercial enterprise. The exercise of such a power, being inconsistent with the purposes for which municipal corporations are ordinarily organized, must rest upon express legislative authority, and in the absence of such authority such a power does not exist.
2. There was no error in granting the injunction.

Argued October 19, 20,—Decided November 27, 1897.

Injunction.    Before Judge Littlejohn.    Lee county.    July 23, 1897.

*Long & Son* and *Allen Fort*, for plaintiff in error.
*Thomson & Whipple* and *J. W. Walters*, contra.

COBB, J.    In 1874 the town of Leesburg was incorporated by an act of the General Assembly.    Acts 1874, p. 201.    It was there declared that an act entitled an act to prescribe the manner of incorporating towns and villages in this State, approved August 26, 1872, excepting the first five sections thereof, should be the charter of the town of Leesburg, with the proviso that no recorder should be elected for the town.    That part of the general law for the incorporation of towns and villages, which was thus declared to constitute the charter of the town, is now embraced in sections 689 et seq. of the Political Code. In a town or village thus incorporated the council has "power to make and pass all needful orders, by-laws, ordinances, resolutions, rules and regulations, not contrary to the constitution and laws of this State."    Political Code, § 696.    Such council also has "power to license and regulate the management of barrooms, saloons, hotels, and private boarding-houses, livery-stables, and private and public transportation through the town or village."    Political Code, § 702.    There being no law prohibiting the sale of liquor in the county in which Leesburg is situated, the council of the town fixed the license for the sale of liquors during the year 1897 at one thousand dollars.    There was no application for a license, and the council thereupon passed the following ordinance:    Section 1.    "Be it ordained by the town council of Leesburg, Georgia, and it is hereby ordained by authority of the same, that the council of said town, as soon as practicable after the passage of this ordinance, establish what is known as a dispensary in said town for the sale of spirituous and malt liquors, under such regulations as they may by their authority enact."    Section 2.    "Be it further enacted, that a committee of three be appointed by the mayor, from the council of said town, to manage and prescribe regulations for said dispensary, to purchase stock and put in operation said dispensary, subject to the approval of the town council."

Section 3 repeals conflicting laws.   Passed and approved June 10, 1897.   The council were proceeding to establish a dispensary in accordance with this ordinance, when certain residents and taxpayers of the town filed an equitable petition, alleging that there was no authority in the charter of the town authorizing the passage of such an ordinance; that debts in the name of the town had been or were about to be contracted under the authority of the ordinance; and praying that the town council be enjoined "from further carrying out their illegal scheme for the establishment of the said dispensary, from selling or offering to sell any liquors in the town of Leesburg, from contracting any debts or paying out any money in connection with said dispensary, and doing any other act in connection with the same."   Upon the hearing the judge granted the injunction prayed for, and to this ruling the defendant excepted.

A public corporation is one having for its object the administration of a portion of the powers of government, delegated to it for that purpose.   Civil Code, § 1833.   Its powers are fixed by its charter.   Civil Code, § 1831.   It may exercise such powers as are expressly delegated to it, as well as those which would be reasonably implied from the terms of the charter. The implied powers of a municipal corporation must be such as are necessary and proper to carry into effect the objects and purposes for which the corporation was created.   Did the town council of Leesburg have authority to establish "what is known as a dispensary" for the sale of spirituous and malt liquors? The purpose of the ordinance being to establish in the town of Leesburg that system of selling liquors which is known as the dispensary system, it becomes necessary to inquire what is such system.   It must be presumed that the town council of Leesburg, when it passed the ordinance quoted above, had in contemplation those dispensaries which are established and operated by authority of the laws of this State.   An examination of such laws will disclose that the controlling features of the system are, first, that no liquors shall be sold by the drink, and none sold shall be drunk on the premises where sold; and second, that the management and control of the sale of liquors under such a system must be in the hands of a person not

pecuniarily interested in the quantity of liquors to be sold. See Acts 1890–91, vol. 2, p. 436 (Athens Dispensary); Acts 1895, p. 157 (Camilla Dispensary); Acts 1896, p. 183 (Ft. Gaines Dispensary). The licensed tippling-house was the evil; the dispensary, under the dispensary system, was the remedy. Two of the things which, combined with others, made the barroom an intolerable nuisance in any community, were entirely obviated. Authority to sell liquors over the counter in such quantities as to be consumed on the premises, when vested in a person who is pecuniarily interested in such sales, is calculated to increase the quantity consumed, and thus bring about intemperance with all its attendant evils. The saloon-keeper not only supplies those who are already addicted to the use of liquors, but he wastes neither pains nor expense to allure into his place of business both young and old, who, but for its attractions, would have cared nothing for the article which he sells. While the dispensary plan does not remedy the evil entirely, it is claimed that it does away, to a great extent, with the blighting influence which inevitably results from the presence of the licensed tippling-house in a community. Such being the case, a dispensary can not be correctly termed either a barroom or a saloon. While it is a place wherein the sale of liquor is lawful, it had its origin in an effort to provide a plan for the authorized sale of liquor, in which the evils resulting from the barroom and saloon would be, to some extent, done away with. It is a protest against the tippling-house, saloon, barroom and grog-shop. A barroom is defined to be "a room containing a bar or counter at which liquors are sold," and also " a room with a bar where liquors and refreshments are served." A bar is defined to be "a barrier or counter from which liquors and food are passed to customers; hence the portion of the room behind the counter where liquors for sale are kept," and also a "room or counter where liquors or refreshments are dispensed, as in a public house." A saloon is defined to be "a public room for specific uses; especially a barroom or grog-shop; as a drinking saloon, etc," and also "a place devoted to the retailing and drinking of intoxicating liquors; a grog-shop." (See Webster's and Standard Dictionaries.) It is apparent from

8

these definitions that the terms "barroom" and "saloon" are inseparably connected with that class of the liquor traffic formerly represented by what was called the tippling-house or grog-shop. The use of either term conveys at once the idea of a place where liquors are sold in such quantities as to be drunk upon the premises where sold. It therefore does not follow that where a municipal corporation has the "power to license and regulate the management of barrooms, saloons, etc.," this power includes the right to operate a dispensary. The power to license saloons clearly imports that the business must be in the hands of some person other than the licensing authority. One person can not be the licensing power and the licensee.

Neither can the power to operate a dispensary be drawn from what is known as the "general welfare clause," because it is not ordinarily within the power of a municipal corporation to engage directly in any commercial enterprise. Such powers only as are usually incident to municipal corporations are those which can be exercised under the authority of the general welfare clause. It is only when the General Assembly sees proper to delegate to a municipal corporation the right to engage in that which would ordinarily be the business of an individual and not the business of the public, that the corporation can exercise such power. It is only under the exercise of the police power that this can be done in any case, and the sovereign power of the State must determine in each instance whether it is for the peace, good order and welfare of the State that a particular business shall be operated directly by the State or one of its municipal corporations. The fact that the dispensaries established and in operation within the limits of this State have been established in pursuance of express authority delegated in the charter of the particular town, evidences that it is the judgment of the General Assembly that express power is necessary for such purpose. There is nothing in the case of *Chambers* v. *Barnesville*, 89 *Ga.* 739, that conflicts with the view we have presented above. The selling of liquor, except for medicinal, mechanical, and sacramental purposes, was prohibited by law in the county in which Barnesville was situated. The General Assembly conferred upon the mayor and council

of Barnesville the power and authority "to regulate and control the sale in Barnesville of spirituous and malt liquors, wines and ciders, for medicinal, mechanical, and sacramental purposes only." After the passage of this act the city authorities of Barnesville adopted by ordinance a dispensary system, and prohibited, under a penalty, the sale by a person other than the keeper of the dispensary. Chambers was prosecuted in the police court of the city for a violation of this ordinance, in selling spirituous liquor, not being a keeper of a dispensary. The ordinance does not appear in the record, and the court affirmed the judgment of conviction, upon the ground that the mayor and council had the right to pass such an ordinance, and in its absence from the record it will be presumed here that a lawful ordinance did exist. The right of the city authorities to operate a dispensary directly was not involved in that case, and it does not appear from the record that the dispensary was operated directly by the city. The sole question involved was whether, if the city of Barnesville had established a lawful dispensary, they could prohibit by ordinance, under a penalty, the sale of liquors by persons other than those whom they placed in charge of the dispensary.

2. The town of Leesburg having no express authority delegated to it by the General Assembly to establish a dispensary, and there being nothing in its charter from which it can be necessarily implied that it was intended to confer such power, there was no error in granting the injunction.

*Judgment affirmed. All the Justices concurring.*