# THE STANDARD BREWING COMPANY

## *vs.*

## REBECCA U. WEIL.

*Landlord and tenant*: *saloon property; refusal of state licenses; liability for rent. Subletting: provisions against—; waiver.*

Certain property was rented for a term of years solely for saloon and restaurant purposes; the Liquor License Commissioners subsequently refused to renew the license for a saloon on the premises. There was no allegation or evidence that the landlord procured or instigated the refusal of the license: *Held,* that this did not amount to a constructive eviction, and that such refusal could furnish no defense to an action by the landlord for the rent. pp. 491-492

The continued disregard by the landlord of the tenant's breach of a provision against subletting amounts to a waiver. p. 489

*Decided December 13th, 1916.*

*Appeal from the Baltimore City Court.* (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Charles E. Siegmund,* for the appellant.

*Moses R. Walter* and *Raphael Walter,* for the appellee.

URNER, J., delivered the opinion of the Court.

In June, 1910, the appellee leased to the appellant a building in Baltimore by an agreement under seal which contained a covenant that the property should be used solely for the purposes of a saloon and restaurant, which should be conducted in an orderly manner and in compliance with all laws in force in the city relating to business of that nature. It was agreed that the leased premises should not be sublet without the lessor's written consent. The lease was for an original term of two years, beginning on the first day of August, 1910; but provision was made for its renewal for an equal period, at the option of the lessee, and for successive extensions of two years each thereafter in the absence of a notice to the contrary by either party prior to the expiration of a current term. The agreement called for rental payments of $100.00 monthly in advance. With the lessor's knowledge and acquiescence the premises were occupied and used, for saloon and restaurant purposes, by sub-tenants of the lessee, from the beginning of the original term until about November 1st, 1914, the lease having been twice renewed upon the same terms in accordance with its provisions to that end. During the whole of that period the rent was paid by the lessee, and it continued to make the stipulated monthly payments until April, 1915. This suit is for the recovery of rent accruing since that time. The defenses, interposed by special pleas, are, first, that the lease is void because the lessee is a brewing company and as such is prohibited by statute from engaging in the saloon business (Acts of 1908, Chapter 196; 1914, Chapter 853; Baltimore City Code, Sec. 678), and, secondly, that the Board of Liquor License Commissioners for Baltimore City, on or about the first day of November, 1914, refused to permit a saloon to be further conducted on the leased premises and has since adhered to that determination. The pleas allege also that in the following April the lessee tendered possession of the property to the lessor. A demurrer to the pleas was sustained, and the

defendant having declined to plead over, a judgment by default was entered and was later extended for the amount of the rent claimed. The ruling on the demurrer to the pleas is the only subject for review on this appeal.

The terms of the lease admit of the construction that the lessee company itself was to conduct a saloon and restaurant in the leased building. But this was not the interpretation adopted by the parties to the agreement, as indicated by their conduct. They acted from the outset upon the theory that the proper and practical method of operating under the lease was for the lessee company to sub-let the property to a tenant who could legally engage in the designated business. One of the provisions of the agreement was that it should be performed with due regard to existing law. While it was formally agreed that the premises should not be sub-let without the written consent of the lessor, this condition has been continuously waived and is therefore not now effective. *Reid* v. *Wiessner Brewing Co.,* 88 Md. 237. Inasmuch as any illegality in connection with the use of the property for the specified object was distinctly forbidden by the agreement, and as it appears from the practical construction and application of its terms by the parties that it was capable of being legally performed, it is entirely clear that the lessee is not entitled to be discharged from liability upon the ground that the lease was illegal and void from its inception.

In alleging that the Board of Liquor License Commissioners had prohibited the further use of the rented property for saloon purposes, the pleas seek to interpose a defense which is incomplete and untenable. There are various considerations which unite in supporting this conclusion. In the first place there is no suggestion that the lessor was in any way responsible for the passage of the prohibitory order. There is no allegation whatever as to the conditions which induced that action. If it was due to a possible default on the part of the lessee in the observance of the covenant that the business should be lawfully conducted, the lessor would

certainly not be chargeable with the consequences of such a breach.

But if we assume, as doubtless we should in the absence of any averment or proof to the contrary, that the refusal of the Liquor License Commissioners to allow a saloon to be longer operated on the leased premises was not because of any neglect of contractual duty on the part of the lessee company, we nevertheless fail to find in that action a sufficient reason for declaring the lease terminated. The lessee has not been entirely deprived of the beneficial interest which the lease conferred. The saloon business was not the only use to which the property was agreed to be devoted. It was leased for the double purposes of a saloon and restaurant, and there is no prohibition against its continued use for the latter object. The specified lines of business were not identical or inseparable. A restaurant is an establishment where meals and refreshments are served, while a saloon, as the term is here used, is a place where intoxicating liquors are sold and consumed. *Webster's New International,* and *Century Dictionaries.* There being consequently a serviceable use for which the property is still available consistently with the limitations of the demise, the lessee company is not in a position to assert that it is totally deprived of the benefit of the tenancy.

It is further to be observed that while the possibility of a failure to secure a license for the saloon on the rented premises, during the whole of the original and renewal terms of the lease, might have been reasonably anticipated, no provision is made in the agreement for such a contingency.

There are cases in which the considerations we have mentioned have been severally treated as of controlling importance in the decision of questions analogous to the one now under discussion.

In a note to *Taylor* v. *Finnigan,* 189 Mass. 568, as reported in 2 *L. R. A.* (N. S.), 973, the ruling there made, that the enforcement by public officers of restrictions as to the

use of leased premises does not amount to an eviction, suspending liability to pay rent, is said to be uniformly supported by other adjudications on the subject, following "the basic principle that to constitute a constructive eviction, the act complained of must have been done by the landlord or by his procurement, with the intention and effect of depriving the lessee of the use and enjoyment of the demised premises in whole or in part." This was the theory of the decision in *Miller* v. *Maguire,* 18 R. I. 770, holding that a tenant was not constructively evicted because a license for the sale of intoxicating liquors on the leased premises could no longer be procured by reason of the erection of a public school in that vicinity. In *Lawrence* v. *White* (Ga.), 19 L. R. A. (N. S.), 966, the same doctrine was applied to a case where the operation of a leased barroom had to be discontinued in consequence of the enactment of a prohibitory law. On the other hand, in *Grabenhorst* v. *Nicodemus,* 42 Md. 236, where property was rented for use as a distillery, and the lessor refused to give his written consent, as a legal pre-requisite, to such user, it was held that the refusal of the lessor amounted to a constructive eviction.

In the case of *O'Byrne* v. *Henley* (Ala.), 50 So. 83, it was held that a lease of property solely for saloon purposes was not terminated by the taking effect during the term of a prohibitory liquor law, where, by construction of the parties, the right was conferred upon the lessee to sell upon the premises non-intoxicating beverages and tobacco, so that the lessee's user of the property was not totally destroyed. The case of *Hecht* v. *Acme Coal Co.* (Wyo. 113 Pac. 788), 34 L. R. A. (N. S.), 773, is to the same effect.

There are also cases in which it has been held without qualification that the enforced discontinuance of a saloon business on leased premises, in consequence of a prohibitory law enacted subsequent to the lease, does not relieve the tenant of liability to pay rent, although the use of the property is restricted to that business by the terms of the lease. The

main theory of such decisions is that the sale of intoxicating liquors being subject to regulation or prohibition under the police power of the State, a lease of property for saloon purposes must be considered as being made subject to the exercise of that power, and if the tenant desires to protect himself against a change in the liquor laws, he should so stipulate in the agreement, and if he omits to provide for such a contingency, he is bound by the contract as executed. *Goodrum Tobacco Co.* v. *Potts-Thompson Liquor Co.,* 133 Ga. 776; 26 L. R. A. (N. S.) 498; *Houston Ice & Brewing Co.* v. *Keenan,* 99 Tex. 79.

The decision we render in the case now before us does not rest alone upon any one of the series of reasons we have referred to, nor upon the principle of the ruling in any of the individual cases cited, but upon the presence here in combination of all the considerations we have mentioned, which undoubtedly afford ample ground for the conclusion that the defense interposed was not sufficient and that the demurrer to the pleas was properly sustained.

*Judgment affirmed, with costs.*