JOHN G. CHRISTOPHER, *Plaintiff in Error*, v. CHARLES BLUM COMPANY, A CORPORATION, AND THE G. MULLER COMPANY, A CORPORATION, *Defendants in Error*.

Opinion Filed July 31, 1919.

Petition for rehearing denied August 18, 1919.

1. A bar room may be defined as a place where intoxicating liquors are sold to be drunk on the premises where sold.

2. If the provisions of a lease of premises for the conduct of a bar room are permissive and the use of such premises for other purposes is allowed, the lease is not affected by the subse-

quent enactment of a statute prohibiting the conduct of a bar room in such premises; but if the provisions of the lease are restrictive and limit the use of such premises to that 'of a bar room, forbidding its use for any other purpose, such lease is abrogated by the subsequent enactment of a statute making such use unlawful.

A Writ of Error to the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Judgment reversed.

*George C. Bedell,* for Plaintiff in Error;

*Odom, Chawford & Butler, L. S. Gaulden* and *Geo. M. Powell,* for Defendants in Error.

WEST, J.—Suit was brought by plaintiff in error upon an alleged breach of a covenant to pay rent by defendants in error upon certain premises located in the City of Jacksonville leased and demised to them by plaintiff in error. The lease which is made a part of the declaration is for a term of three (3) years from and after the 1st day of April, 1913, up to and including the 31st day of March, 1916, and contains the following provision describing the property let and reciting the use to which it was to be put by the lessees:

"That the said lessor doth hereby lease and remise unto said lessees, all and singular, that certain part or portion of the building of the lessor situate on the north side of East Bay Street, stores known as Numbers 341-343, 345 East Bay Street, measuring to-wit: sixty (60) feet wide by ninety-five (95) feet deep, together with the floors immediately above said stores, for the purpose of carry-

16—Vol. 78

ing on a wholesale and retail business, both or either, and other storage purposes. Store known as Number 345 is to be used on the first floor only for a first class bar-room for white people. The adjoining store Number 343 is to be used for a bar-room for colored people, with solid wall at least sixteen (16) feet from rear of the building; and furthermore this store (number 343) will have no toilet privileges; and should this colored bar, in the judgment of the owner of the building, be a detriment in any way, the lessees agree at the end of twelve (12) months to close this colored bar and use this space in connection with their wholesale business."

There is in the lease a covenant that the lessees would "not use or permit the said premises to be used for any illegal or improper purposes."

There were pleas by each defendant denying that the deed sued on was its deed. Each defendant also filed a plea called a sixth or additional plea in which, after admitting the lease of the premises described in the declaration, and the occupancy and use of such premises under the terms of the lease until the first day of October, 1915, it is averred that: "it was expressly agreed in and by said lease or agreement between the parties that the store known as number 345 should be used on the first floor only for first-class bar-room for white people, and that by the terms of Chapter 6860, Laws of Florida, approved the 5th day of May, 1915, and enacted subsequent to the execution of said lease or agreement, the operation of a barroom in the State of Florida, subsequent to the 30th day of September, 1915, was rendered illegal, so that the defendants were thereby precluded from using the said store at 345 East Bay Street for the purpose to which its use had been expressly restricted under the

terms of said lease or agreement, and the defendants were thereby evicted, by operation of law, on October 1st, 1915, from that portion of said leased premises; * * * that the defendants entered into the said agreement for the lease of said premises with a view of occupying the entire leased premises, and every part and parcel thereof; that the stores and rooms therein described were so located with reference to each other that the occupancy of the entire leased premises was required for the successful operation of any business which the defendants desired to conduct therein; that the right to occupy the entire leased premises described in said lease or agreement constituted a valuable consideration, and is one of the considerations which induced the execution of the said lease or agreement by these defendants and the said defendants would not have executed said lease or agreement had it not been for such consideration moving to them, and had it not been for such consideration moving to these defendants, the minds of the parties would not have met, and the said lease or agreement would not have been executed."

There was a demurrer to this plea which was overruled.

Pleas called additional eighth pleas averring the payment of rent for the month of September, 1915, were filed by the defendants.

Issue was joined upon the first and eighth pleas and to the sixth or additional plea there was a replication in which it was denied that the stores and rooms described in the lease were so located with respect to each other that the occupancy of the entire leased premises was required for the succsssful opration of any business which the defendants desired to conduct therein.

This statement shows the issues upon which the case was submitted. There were other pleadings and rulings of the trial court upon questions arising in making up the issues, but counsel for plaintiff in error in his brief asserts that the assignments all go to one point, namely, was the lease under consideration abrogated by the Davis Package law? This is the only question argued in counsel's brief and it is sufficiently presented by the pleadings which we have set out.

There was a directed verdict for the defendants.

Prior to the taking effect of the statute referred to in the pleadings the lessees gave notice to the lessor that they would upon the taking effect of this statute relinquish possession of the leased premises and surrender up the possession thereof to the lessor on the night of September 30th, 1915, the day upon which the act took effect upon the theory and claim, made by them, that the enactment and taking effect of this statute operated to terminate the lease under which they held.

It was proved at the trial that the lessees vacated the leased premises prior to October 1st, 1915. The first plea was not sustained, but was disproved by the production and reception in evidence of the original lease sued on. The eighth plea was proved by the introduction in evidence of the paid check of the lessee, Charles Blum Company, to the lessor for the amount due for rent for the month of September.

The question therefore which is presented for our determination is whether the trial court erred in overruling plaintiff's demurrer to defendants' sixth or additional pleas and in directing a verdict for the defendants upon the issues made by such pleas and plaintiff's replication thereto, and the evidence offered upon this issue by the

respective parties. The determination of this question requires a consideration of the effect of the enactment of Chapter 6860, Laws of Florida. This statute has been upheld as valid and enforcible by this court. Ex Parte Pricha, 70 Fla. 265, 70 South. Rep. 406. By section one it forbids the sale of intoxicating liquors in less quantities than one-half of a pint or otherwise than in securely sealed receptacles, and by section seven the consumption of such liquors upon the premises where sold is forbidden.

The contention is made by the lessees that this statute makes it unlawful for them to conduct a bar room upon the leased premises. The term "bar room" has acquired a well understood meaning. It may be defined as a place where intoxicating liquors are sold to be drunk on the premises where sold. Beiser v. State, 79 Ga. 326, 4 S. E. Rep. 257; Mayor, etc., of Town of Leesburg v. Putnam, 103 Ga. 110, 29 S. E. Rep. 602; In re Schneider, 11 Ore. 288, 8 Pac. Rep. 289; City of Spokane v. Baughman, 54 Wash. 315, 103 Pac. Rep. 14. In the case of Beiser v. State, *supra*, the Supreme Court of Georgia defines a "bar room" as "a place for the sale of intoxicating liquors, by retail, for consumption at the place of sale." So defined it is clear that upon the enactment of this statute the operation of a bar room in this State became unlawful.

This brings us to a consideration of the lease itself. If its terms are such as to show that the use of the leased premises as a bar room was *permissive* the enactment of the statute under consideration had no effect upon the lease because while the lessees could not thereafter use the building as a place in which to conduct a bar room, they were at liberty to use such premises for some lawful purpose. But, on the other hand, if the terms of the lease are *restrictive* and, under its provisions such prem-

ises could be used by the lessees only as a first class bar room for white people the lease was abrogated by the statute because it seems to be well settled that where a lease restricts and limits the use of premises let to a particular specified purpose and, thereafter because of the enactment of a valid statute, such use becomes unlawful the subject matter of the contract is destroyed and the covenants of such lease will not be enforced against either party thereto. Greil Bros. Co. v. Mabson, 179 Ala. 444, 60 South. Rep. 876; American Mercantile Exch. v. Blount, 102 Me. 128, 66 Atl. Rep. 212; Hooper v. Mueller, 158 Mich. 595, 123 N. W. Rep. 24; Kahn v. Wilhelm, 118 Ark. 239, 177 S. W. Rep. 403; Heart v. East Tennessee Brewing Co., 121 Tenn. 69, 113 S'. W. Rep. 364; The Stratford v. Seattle Brewing & Malting Co., 94 Wash. 125, 162 Pac. Rep. 31.

Similar questions have frequently been before the courts in this country in recent years and in a note to the case of Stratford v. Seattle Brewing & Malting Co., *supra,* in L. R. A. 1917C, 935, it is said: "As in the earlier cases, the recent decisions seem to turn upon the question whether the grant of the use for the sale of intoxicating liquors is exclusive or is merely permissive, the rule being that when the lease is exclusive the passage of prohibitory laws terminates it, but that where the use of the premises for the purposes of selling intoxicants is merely permissive, the beneficial use is not affected by such laws so as to avoid the lease."

The application of this rule is illustrated by later cases from the Supreme Court of Washington. Yesler Estate, Inc. v. Continental Distributing Co., 99 Wash. 480, 169 Pac. Rep. 967; Brunswick-Balke-Collender Co. v. Seattle Brewing & Malting Co., 98 Wash. 342, 167 Pac. Rep. 58.

There are authorities which hold that irrespective of whether the terms of the lease of property for bar room purposes are permissive or restrictive in effect the subsequent enactment of a statute such as the one here involved will not relieve the tenant of the liability to pay rent. 16 R. C. L. p. 743; Hecht v. Acme Coal Company, 19 Wyo. 18, 113 Pac. Rep. 788, Ann. Cas. 1913E, 258; J. J. Goodrum Tob. Co. v. Potts-Thompson Liquor Co., 133 Ga. 776, 66 S. E. Rep. 1081, 26 L. R. A. (N. S.) 498; Standard Brewing Co. v. Weil, 129 Md. 487, 99 Atl. Rep. 661, L. R. A. 1917C, 929.

The Supreme Court of Wyoming in the case of Hecht v. Acme Coal Company, *supra*, after reviewing many authorities on this subject, said: "Entertaining the view as expressed by a majority of the courts we do not deem it necessary for the decision of this case to decide whether the words 'for saloon purposes' as used in the lease were so used in a restrictive or a permissive sense. In either event the tenant would not be relieved from the payment of the rent. (Goodrum Tobacco Co. v. Potts-Thompson Co., supra; Houston Ice & Brewing Co. v. Keenan, supra; Lawrence v. White, supra.) The sale of intoxicating liquors is always subject to regulation by the state in the exercise of its police power, and when the landlord has no interest other than a pecuniary one of protecting his property from spoliation and the value of its use as rental, the principles of law announced in the foregoing decisions are applicable. A lease for unlawful purposes at the time of its execution is void. (Secs. 469, 470, 471, Underhill on Lanlord and Tenant.) A provision in the lease for relief from further liability for rent or for an abatement or proportional reduction thereof in the event of a change of the law with reference to the business to

be conducted on the premises is for the benefit of the lessee and when the landlord has no interest in the business to be conducted, a change in the law during the term of the lease whereby such business is wholly or partially prohibited, does not .of itself relieve the tenant from his obligation to pay the rent for the entire term."

The Supreme Court of Georgia in the case of J. J. Goodrum Tobacco Co. v. Potts-Thompson Liquor Co., *supra*, said: "We do not deem it necessary for the decision of this case to decide whether the clause that 'the purpose of this lease is for the operation by second party of a general retail business'.denotes only permission to conduct that particular business, or restricts the tenant from devoting the premises to other lawful beneficial use. In either event, the tenant would not be relieved from the payment of rent. During the civil wars in the reign of Charles I, in an action of debt for rent, the defendant pleaded, by way of excuse for the nonpayment of rent, that he had been driven from the premises by the public enemies, *viz*, Prince Rupert and his soldiers; but the court held that neither the hostile army nor an inundation or other casualty would abate the payment of rent where the tenant expressly covenants to pay rent. Parradine v. Jane, Aleyn, 26. Chancellor Kent says that the reason of this rule, which has become fixed and settled in the common law, is that, 'if a party will voluntarily create a duty or charge upon himself, he ought to abide by it when the other party is not in fault, and when he might have provided, if he had chosen, against his responsibility in case of such accidents.' 3 Kent Com. 467."

The Supreme Court of Maryland in the case of Standmitted to the court upon the transcript of the record of the judgment aforesaid, and argument of counsel for the

respective parties, and the record having been seen and inspected, and the court being now advised of its judgment to be given in the premises, it appears to the court that Chapter 7983, Acts of 1919, abolishes Special Road and Bridge District No. 1 of Baker County, the subject-matter of this litigation; it is, therefore, considered, or-ard Brewing Co. v. Weil, *supra,* said: "There are also cases in which it has been held without qualification that the enforced discontinuance of a saloon business on leased premises, in consequence of a prohibitory law enacted subsequent to the lease, does not relieve the tenant of liability to pay rent, although the use of the property is restricted to that business by the terms of the lease. The main theory of such decisions is that, the sale of intoxicating liquors being subject to regulation or prohibition under the police power of the state, a lease of property for saloon purposes must be considered as being made subject to the exercise of that power, and if the tenant desires to protect himself against a change in the liquor laws, he should so stipulate in the agreement, and if he omits to provide for such a contingency, he is bound by the contract as executed."

In the case of Houston Ice & Brewing Co. v. Keenan, 99 Tex. 79, 88 S'. W. Rep. 197, the Supreme Court of Texas considered the effect upon a lease providing "that said premises shall be used for the saloon business" of an election under the local option statute of that State resulting in favor of prohibition. In holding that the putting into effect of prohibition under the statute did not terminate the lease and absolve the tenant from liability for the rent the court said: "For the purposes of this case it may be asserted that, when a party voluntarily undertakes, and by contract binds himself, to do an act or

thing, without qualification, and performance thereof becomes impossible by some contingency which should have been anticipated and provided against in the contract, the performance will not be excused. In such case the party's failure to exempt himself from responsibility in the event of the happening of the contingency will be attributable to his own folly, and he will be held to make good his contract."

In a like situation the Supreme Court of Michigan in the case of Hyatt v. Grand Rapids Brewing Co., 158 Mich. 350, 134 N. W. Rep. 22, held to the same effect. The court said: "We are of opinion that the words in the lease, 'to be occupied for the purpose of operating and conducting a retail liquor business and saloon,' should be construed as permissive in character, rather than as a warranty on the part of the lessors that the premises could be legally so occupied throughout the term. We think the court may take judicial notice of the fact that the use of premises for the sale of liquor at retail is such a use as tends to injure the reputation of the property so used. In inserting in the lease the words quoted, the lessee doubtless desired to have it placed beyond peradventure that it might use the premises for the purpose named. Had it desired to secure such a warranty from the lessor, it would have been easy to provide in the lease for its avoidance upon the happening of the contingency which later made it impossible for it to sell liquor at retail in Clinton County."

In view of the principles announced in the foregoing authorities we think that the lease under consideration should be construed as permissive rather than restrictive and that the passage of the statute referred to in the pleadings did not terminate the lease and absolve the

lessees from further liability for rent to the lessor. It was the duty of the lessees in making the contract to provide against such a contingency. They are chargeable with knowledge that regulation of the liquor traffic was at the time the lease was made a live subject of legislative consideration; and when they assert a claim to release from liability upon their contract to pay rent because of a subsequently enacted statute they should be able to point out the provision of the contract which makes its continued performance unlawful and thereby relieves them from liability under it. In other words, they should be able to clearly show that the lease restricts the use of the premises leased to the conduct of a business which is rendered unlawful by the statute and does not permit its use for a lawful purpose. If there is doubt as to the meaning of the language employed and such language is reasonably susceptible of a construction which continues such lease in force the doubt should be so resolved as to give effect to the contract. If in such a case loss is to be sustained by the tenant it can not be said to be occasioned by any act or omission of the landlord. It results from the failure of the tenant to provide against a contingency which might readily have been foreseen.

The order of the trial court overruling the demurrer to the pleas of defendants was error. This being so it is not necessary to consider subsequent proceedings in the case.

The judgment is therefore reversed.

Browne, C. J., and Taylor and Ellis, J. J., concur.

Whitfield, J., dissents.