PROPRIETORS REALTY COMPANY, RESPONDENT, v.
DETRICH WOHLTMANN, APPELLANT.

Submitted July 1, 1920—Decided January 19, 1921.

1. The word "cafe," as ordinarily and popularly used, means a
   restaurant or house for refreshments.
2. In construing a written contract the words employed will be
   given their ordinary and popularly accepted meaning, in the
   absence of anything to show that they were used in a different
   sense.
3. In the absence of anything showing that the word "cafe" was
   not used in its ordinary and popular sense, under a lease of
   premises "to be used and occupied as a cafe and for no other pur-
   pose whatsoever," refreshments of all kinds allowed by law may
   be kept and sold.
4. The general rule is that where the contract does not restrict the
   use of the leased premises to a single purpose, it is not invali-
   dated by a subsequent enactment prohibiting the use for one of
   the several purposes contemplated by the lease.
5. A lessee is not released from his liability for rent under a lease
   of premises "to be used and occupied as a cafe and for no other
   purpose whatsoever," merely because he was subsequently de-
   prived of their use for the sale of intoxicating liquors for the re-
   mainder of the term by the eighteenth amendment to the federal
   constitution and the Volstead act.

On appeal from the First District Court of Jersey City.

Before Justices TRENCHARD, MINTURN and KALISCH.

For the appellant, *Charles E. S. Simpson.*

For the respondent, *McDermott & Enright,* and *Percy G.
Britt.*

The opinion of the court was delivered by

TRENCHARD, J.   This is an action by the Proprietors
Realty Company against Detrich Wohltmann for rent re-
served by a written lease made for a term of five years from
July 1st, 1916, at a rental of $3,000 per annum, payable

monthly in advance. Plaintiff sued for the February, 1920, rent. There was a verdict in favor of the plaintiff, and the defendant appeals from the consequent judgment.

We are of the opinion that the judgment is right.

At the trial the lease was admitted and the testimony established that on January 28th, 1920, the defendant offered to surrender the demised premises; that such offer was refused by the plaintiff; that the defendant then abandoned the premises, and that the rent in question was unpaid. Thereupon the judge directed a verdict for the plaintiff, and that was proper.

The lease in question provides that the demised premises were "to be used and occupied as a cafe and for no other purpose whatsoever."

The defendant contends that by the adoption of the eighteenth amendment to the federal constitution and the enactment of the national prohibition law, known as the "Volstead act," the lease in question was nullified. But that is not so.

By the lease the use of the premises was limited to cafe purposes.

The word "cafe" was originally a French word meaning "a coffee house," but the word as now ordinarily and popularly used in English means a restaurant or house for refreshments.

In construing a written contract the words employed will be given their ordinary and popularly accepted meaning, in the absence of anything to show that they were used in a different sense. In the present case there is nothing to show that the parties used the word in any other than its popular and ordinary meaning.

It follows, therefore, that under such a lease refreshments of all kinds allowed by law might be kept and sold.

No doubt the parties contemplated, among other things, the sale of both intoxicating liquors and non-intoxicating beverages, because the lessee covenanted in the lease, among other things, "to strictly comply with all national, state, municipal, or other laws, ordinances, regulations, and rules

of any kind governing the possession, sale, ownership or handling of intoxicating liquors or *beverages of any kind* that the lessee may sell, own, have possession of or handle." But such intention was of course contingent upon such sale continuing to be lawful. This is to be inferred, not only from the language used, but from the fact, of course known to them, that the right to sell intoxicating liquors for beverage purposes then rested in the discretion of public officers, and above all was subject to federal and state control.

Since neither the eighteenth amendment nor the Volstead act deprived the lessee of the right to keep and sell nonintoxicating beverages and refreshments, we are called upon to deal only with a case where the lessee was subsequently deprived of the use of the premises for one only of the several purposes contemplated by the lease, and we limit our discussion and decision to such a case.

Now the general rule is that where the contract does not restrict the use of the leased premises to a single purpose, it is not invalidated by a subsequent enactment prohibiting the use for one of the several purposes contemplated by the lease.

Pertinent cases are collected in a useful note in 7 *A. L. R.* 836.

This rule proceeds upon the theory that since such leases are for more than one purpose, the depriving of the lessee of one or more less than all of the purposes contemplated does not deprive him of the beneficial use of the leased property, he being still entitled to use the premises for the carrying on of the unrestricted part of the purposes contemplated by the lease.

Thus in *Standard Brewing Co.* v. *Weil* (1916), 129 *Md.* 487; *L. R. A.* (1917 C) 929; 99 *Atl. Rep.* 661; *Ann. Cas.* (1918 D) 1143, there was a lease for "saloon and restaurant" purposes only, and it was held that the lessee was not released from his liability under the lease because of a subsequent order of the liquor license commissioners prohibiting further use of the premises for a saloon, the lessee not being thereby

entirely deprived of the beneficial use conferred by the lease (the court pointing out that the word "saloon," as there used, meant a place where intoxicating liquors were sold and consumed).

In *Conklin* v. *Silver* (*Iowa*), 174 *N. W. Rep.* 573; 7 *A. L. R.* 832, where a building was leased for the sole purpose of carrying on the "iron, metal, and rag business" therein, it was held that a statute inhibiting the storing of rags by dealers therein in buildings of the character leased, did not render the lease invalid, since it did not deprive the lessee of the beneficial use or enjoyment of the property because he could still carry on the business of dealing in iron, metal and rags on the leased premises, and was merely denied the privilege of storing rags therein, which, although it possibly rendered the use less valuable, did not destroy the beneficial use.

So, in *Grimsdick* v. *Sweetman* (1909), 2 *K. B.* (*Eng.*) 740; 78 *L. J. K. B.* (*N. S.*) 1162; 101 *L. T.* (*N. S.*) 278; 73 *J. P.* 450; 53 *Sol. J.* 717, where the lease was of a "beerhouse and premises with the bakeshop in the rear," in holding that the lessee's inability to renew his license to conduct the beerhouse as such did not terminate the lease, both Justice Darling and Justice Jelf adopted the principle that a lease is not terminated unless the beneficial use of the premises is more than merely impaired, and applying the same argued that there was no such destruction of the uses specified in the lease as would wholly deprive the lessee of an advantage therefrom, since he could still live in the house and use the bakeshop even though he could not run a beerhouse.

The same principle is illustrated in *Teller* v. *Boyle* (1890), 132 *Pa.* 56; 18 *Atl. Rep.* 1069, where the property was leased for exclusive use as a saloon and dwelling. And see *Lawrence* v. *White* (1908), 131 *Ga.* 840; 19 *L. R. A.* (*N. S.*) 966; 63 *S. E. Rep.* 631; 15 *Ann. Cas.* 1099, wherein "the Albion Hotel," consisting of "the corridor, office, bar, barber shop, cigar stand, billiard-room," &c., was leased, and in which it was held that the use was permissive so that the passage of a statute prohibiting the sale of intoxicating liquors

did not, in the absence of a provision in the contract, entitle
the lessee to a reduction or proportional abatement of the
agreed rental.   And see also *Christopher* v. *Charles Blum Co.*
(1919) (*Fla.*), 82 *So. Rep.* 765, wherein a building was
leased for the purpose of carrying on a "wholesale and
retail business, both or either, and other storage purposes,"
with a proviso that a certain part of the building was to be
used "only for a first-class barroom for white people," and in
which it was held that the uses specified were permissive, and
not restrictive, so that it could not be said either that the
lease was terminated and the lessees evicted, or that the les-
sees were relieved from further payment of rent by the enact-
ment of a statute rendering the operation of barrooms illegal.

Coming now to the application of the rule to the present
case it will be seen that the lessee has not been entirely de-
prived of the beneficial interest which the lease contemplated.
The sale of intoxicating liquors was not the only use to which
the property was agreed to be devoted.   It was, in legal effect,
leased for the double purposes of the sale of intoxicating
liquors and the sale and service of non-intoxicating beverages
and refreshments, and there is no prohibition against its con-
tinued use for the latter object.   These lines of business were
not identical or inseparable.   There being, consequently, a
serviceable use for which the property is still available con-
sistently with the limitations of the demise, the lessee is not
in a position to assert that he is totally deprived of the benefit
of the tenancy.   It is further to be observed that while the
impossibility of obtaining a license for the sale of intoxicating
liquors on the rented premises during the whole of the term
of the lease might have been reasonably anticipated, no pro-
vision was made in the agreement for the relief of the lessee
in such a contingency.

Stated concretely, the rule is that a lessee is not released
from liability for rent under a lease of premises "to be used
and occupied as a cafe, and for no other purpose whatsoever,"
merely because he was subsequently deprived of their use for
the sale of intoxicating liquors for beverage purposes for the
remainder of the term by the eighteenth amendment to the

federal constitution and the Volstead act, it appearing that no provision was made in the lease for such a contingency. And that is this case.

Our decision does not rest alone upon any one of the reasons we have referred to, but upon the presence here in combination of all the considerations we have mentioned, which undoubtedly afford ample ground for the conclusion that the defence interposed was not well founded.

The judgment will be affirmed, with costs.