THE STERN HOLDING COMPANY, PLAINTIFF-APPELLANT, v. PHILIP O'CONNOR, THOMAS O'CONNOR AND JAMES O'CONNOR, CO-PARTNERS TRADING AS O'CONNOR BROS., DEFENDANTS-RESPONDENTS.

Submitted October 5, 1937—Decided January 28, 1938.

Before Justices LLOYD, CASE and DONGES.

For the appellant, *Schumann & Schumann.*

For the respondents, *Nicholas S. Schloeder.*

LLOYD, J.    Plaintiff below sued on a written lease for rent of premises located in Jersey City, North Bergen and Secaucus. The case was considered by the trial judge on a stipulation of facts and the judge found "as matter of law" that the plaintiff was not entitled to recover and gave judgment for the defendants.

The basis of the conclusion was that the lease contract was an illegal one and that the plaintiff was without remedy because of this fact.

The lease as at first written and dated November 30th, 1931, was for five years and six months and covered seven acres of ground in Jersey City only. In January, 1932, a

small contiguous tract of five-eighths of an acre located in North Bergen and Secaucus was incorporated in the lease.

Under the lease the ground was to be used for the dumping of ashes, street sweepings and other refuse of Union City, Guttenberg and the borough of Edgewater, with privilege to the lessors of free access thereto not inconsistent with such use by the tenants.

The lease contained a further provision that if the lessees procured contracts with North Bergen, West New York, Wee-hawken and Cliffside the rentals should be increased by $15 per month each for the North Bergen and West New York contracts and $10 each for Weehawken and Cliffside. From March 1st, 1936, to September 1st, 1936, the lessees held such contracts with North Bergen and West New York.

An ordinance of Jersey City prohibits the deposit of "Manure * * * hops, malt, offal or garbage" or the accumulation of any offensive or nauseous substance within the city limits, and in December, 1933, the Jersey City authorities began to warn the lessees not to dump "ashes, garbage, street sweepings and other refuse" and these warnings culminated in the arrest of one of the lessees' drivers for dumping garbage, since which time the Jersey City property has not been used by them.

The rents sued for amounting to $385 is for the periods from March 1st, 1936, to February 1st, 1937.

We think the judgment was wrong. The claim of the respondent seems to be that because garbage could not be dumped under the ordinance, the lease was ineffective and void by reason of its being for an unlawful purpose. The claim is unsound. The lease is for the dumping of ashes, garbage, street sweepings, and other refuse. The ordinance prohibits only the "deposit of manure, hops, malt, offal or garbage or accumulations of any offensive or nauseous substances." The lease also requires the lessees to comply with all statutes, ordinances and rules and orders, &c., of the city government. Unless ashes, street sweepings and other refuse come within the prohibition as to accumulations of offensive or nauseous substances, but one of the uses prescribed in the

lease is prohibited. As to this no proof was offered and no stipulation made that the remaining uses were within the ban and we can find nothing in the meaning of the terms used to bring them within it.

In the words themselves there is nothing to suggest that ashes or street sweepings on a lot of ground are either offensive or nauseous and the same is true of "other refuse." The dictionary meaning of the word refuse is "worthless matter, rubbish, scum, leavings, &c.," and "the waste of municipalities is usually used to include all wastes except garbage and ashes." One can set his imagination to work and think of a score of elements that would come within the meaning of the word, such as leaves, driftwood, fallen branches, litter thrown in the streets, &c.

The door was thus left open to all of the uses mentioned in the lease except deposit of garbage. This was not sufficient to vitiate or render the lease void. It permitted the dumping of many types of waste matter of which garbage was but one, and the inability to so dispose of the latter gave no right to terminate the lease. The law to this effect is well stated in the exhaustive opinion of Mr. Justice Trenchard in *Proprietors Realty Co.* v. *Wohllmann,* 95 *N. J. L.* 303.

While the lease authorizes, but does not compel, use of the premises for the dumping of ·garbage, it inferentially bars such use if illegal when it enjoins obedience to municipal ordinance. The lessee had the option to confine the dumping to permissible materials or to secure if possible modification of the ordinance. The lease was not invalid for failure of warranty of fitness under *Hyland* v. *Parkside Investment Co., Inc.,* 10 *N. J. Mis. R.* 1148; 162 *Atl. Rep.* 521, or as being a contract for an unlawful purpose, nor was it rendered void for failure of consideration.

The judgment is reversed.