STERN HOLDING COMPANY, RESPONDENT, v. PHILIP O'CONNOR ET AL., PARTNERS, ETC., APPELLANTS.

Submitted October 4, 1938—Decided November 14, 1938.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellants, *Nicholas S. Schloeder.*

For the respondent, *Schumann & Schumann* (*Emil W. A. Schumann*, of counsel).

The opinion of the court was delivered by

PARKER, J.   These appeals are from judgments for plaintiff after the retrial of cases considered in Nos. 402 and 403 of the January term, 1938, of this court, wherein there were reversals of judgments for the defendants.   The two cases were retried together, some additional evidence was taken (which will be presently considered) and judgments entered in favor of the plaintiff, as already noted.   The opinion of this court in No. 402 is reported in 119 *N. J. L.* 291; 196 *Atl. Rep.* 432, and the *per curiam* in No. 403 is reported in 119 *N. J. L.* 347; 196 *Atl. Rep.* 433.

There were two suits for unpaid rent of vacant land to be used for dumping purposes.   The rent claimed in No. 403 was for the months of March to September, 1936, inclusive; that claimed in No. 402 for October, 1936, to February, 1937,

inclusive. Both claims were based on the same lease; and it was expressly stipulated that any judgment entered in the case relating to the earlier period should control the other case as well.

As stated in our former opinion, the trial court found for defendants on the ground that the ordinance of Jersey City prohibited the dumping of "garbage" within city limits, and that this invalidated the lease because the document contemplated the dumping of garbage. The reasons for reversal are stated in that opinion, and need not be repeated here. At the second trial, the evidence taken at the first one was stipulated into the cases, and the defendant Philip O'Connor testified as an expert witness that in the broad trade usage, as used in the county of Hudson, from his experience, "garbage" is all the refuse from households, such as decayed food, ashes, tin cans, paper. To quote his testimony, "there is nothing separated in Hudson county, it is all in one." He went on to say that the waste from houses and buildings "is put out at the curb * * * it is all mixed garbage * * * rubbish of all descriptions * * * and the truck comes along and we load it and cart it and take it to the dump." He added that it was impossible to separate it into components, when so received. Based on this evidence, the argument before the trial court was, and is here, that the word "garbage" both in the lease and in the city ordinance, meant or included any mixed refuse, and particularly ashes, tin cans, and the like, and that in consequence defendants could make no use whatever of the demised premises within the terms of the lease. The trial judge refused to take that view of the matter, and we think that he was right, and for at least two reasons.

The language of the lease is this: "for the dumping of ashes, garbage, street sweeping and other refuse."

It is to be noted that in the lease "garbage" is distinguished from "ashes" and "other refuse." On the face of the lease the meaning appears to be that first given in Webster's International Dictionary, viz., "Offal, as the entrails of an animal or fish, refuse animal or vegetable matter from a kitchen,

market, or store," as distinguished from the second, "often, loosely, waste material from a house, market or store, consisting of offal mixed with other refuse, as ashes, paper, tin cans, &c.; hence, anything worthless or filthy; refuse."

The language of the ordinance is: "No pile or deposit of manure of any description, hops, malt, offal or garbage, nor accumulation of any offensive or nauseous substance shall be made within the limits of said city."

1. The burden of proving the alleged special (and localized) meaning of the word "garbage" was on the defendants, and the question was one of fact for the trial judge, who plainly considered the evidence insufficient, and was fully justified in so finding. *Cramer & King Co.* v. *National Surety Co.,* 103 *N. J. L.* 83, 85.

2. The testimony, even if accepted as sufficient, did not include "street sweepings," as a component of "garbage," and so at least one use under the lease was unimpaired. *Proprietors Realty Co.* v. *Wohltmann,* 95 *Id.* 303; 112 *Atl. Rep.* 410, cited in our former opinion herein. Nothing in the ordinance required street sweepings to be mixed in the same truck with house waste; and if the defendants so contracted with the municipalities, that was their affair.

It is claimed that there was error in regard to what is called in the brief, "the escalator clause" of the lease. This, to state it shortly, limited the dumping on the demised premises to material from certain named municipalities in Hudson county, at the primary rent reserved, and provided further that in the event that the lessees should "procure contracts" from certain other named municipalities, the rent should be increased by specified amounts. The argument now is, as we understand it, that because the letting clause uses the language "to be used and occupied for the dumping of ashes, garbage," &c., the procurement of contracts" with additional municipalities created no obligation for increased rent unless the premises could be used for all the purposes specified, and particularly for garbage. But quite plainly, the liability for additional rent stands on the same footing as that for the original rent, except that the original rent is based

on existing contracts, and the additional rent on prospective contracts. The same legal rules apply to both.

This, we think, covers all the ground argued. The judgments under review are affirmed; and as on our former reversal the rule prescribed that costs were to abide the event, the present affirmance will be with costs both of such affirmance and of the former reversal.