35 C.C.P.A.(Patents)

## ATLANTIC SEAFOOD PACKERS v. FLORIDA FRUIT CANNERS, Inc.
(two cases).
Patent Appeal Nos. 5383, 5384.

Court of Customs and Patent Appeals.
March 2, 1948.

Beekman Aitken, of New York City, for appellant.

Mason, Fenwick & Lawrence, of Washington, D. C. (Edward G. Fenwick, of Washington, D. C., of counsel) for appellee.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in trade-mark opposition proceedings from the decision of the Commissioner of Patents, 69 U.S.P.Q., 177, affirming the decisions of the Examiner of Interferences sustaining appellee's notices of opposition and holding that appellant was not entitled to the registrations of its marks hereinafter set forth. The cases were submitted on the same record and were briefed and argued together. Accordingly, we shall dispose of the two appeals in one decision.

Appellant filed its application for registration of the trade-mark "Silver Mist" for use on "canned grapefruit juice" on October 2, 1943, under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq. Its application was amended January 19, 1944, in which amendment the word "Silver" was disclaimed as descriptive apart from the mark as shown. In its application, appellant alleged that it had used its mark on its goods since September 20, 1943.

On October 2, 1943, appellant filed its application for the registration of the term "Golden Mist," under the Trade-Mark Act of February 20, 1905, for use on canned and bottled orange juice, and it was alleged in the application that it had used its mark since September 20, 1943. In its application, appellant disclaimed the word "Golden" as descriptive of the orange juice, apart from the mark as shown. In each of its applications, however, appellant reserved all common law rights in its entire marks.

Appellee opposed the registration of appellant's marks, claiming that the marks were confusingly similar, under section 5 of the Trade-Mark Act of February 20, 1905, to appellee's mark "Silver Nip," registration No. 255630, registered April 30, 1929, for use on "Grapefruit Juices for Making Nonalcoholic, Non-Cereal, Maltless Beverages," and its mark "Golden Nip," registration No. 279725, registered January 20, 1931, for use on fruit juices for food purposes, particularly for orange juice extracted from fresh, fully ripened oranges.

The goods of each of the parties are sold in containers to the general public.

It appears from the record that L. Maxcy, Incorporated, and its predecessor, the Florida Fruit Canners, Incorporated, used its marks on its goods for approximately thirteen years prior to the adoption and use of appellant's marks; that appellee has expended large sums of money in advertising its goods and its trade-marks in newspapers, over the radio, on wall hangings, caps, book matches, and direct mail advertising throughout the United States; that from 1930 to June 30, 1944, it expended $33,000 in advertising its "Golden Nip" trade-mark for orange juice, and $102,000 in advertising its "Silver Nip" trade-mark for use on grapefruit juice; and that during that period of time, appellee sold nearly $2,000,000 worth of orange juice under its trade-mark "Golden Nip" and sold $5,000,000 worth of grapefruit juice under its trade-mark "Silver Nip."

It was brought out by counsel for appellant on the cross-examination of W. H. Holloway, auditor of appellee, L. Maxcy, Incorporated, that the color of its orange juice was similar to the color as shown in appellee's Exhibit No. 6-F which appears to be golden in color, and that the color of its grapefruit juice is approximately the color of that shown in appellee's Exhibit No. 6-E which is not the color of silver but is somewhat yellow in color.

It appears from the evidence introduced by appellant that it has used the trade-mark "Silver Mist" since January 20, 1930, on canned shrimp, although there is no evidence of record as to the color of canned shrimp. We think it is a matter of which we may take judicial notice that canned shrimp is not the color of silver. Appellant has also used its trade-marks, "Silver Mist" and "Golden Mist," on containers for grapefruit juice and orange juice, respectively, since September 20, 1943.

On cross-examination, George C. Quint, a witness for appellant, who, at the time he testified, was manager of the Leesburg Canning Company, a division of the appellant company, formed in September 1943, and which company also used the trade-marks "Silver Mist" on canned grapefruit juice, and "Golden Mist" on canned orange juice, stated that approximately 104,000 cases of grapefruit juice under the trade-mark "Silver Mist," and approximately 55,000 cases of orange juice under the trade-mark "Golden Mist," were shipped by the Leesburg Canning Company since September 20, 1943. The witness testified that the orange juice which its company sold was definitely of a golden color and that the grapefruit juice was a blending of silver and mist color. On cross-examination he stated that mist has a color and that he would describe it as "a silvery, very light gray." he further testified that the term "Silver Mist" is intended to indicate a color such as silver or mist. The witness, however, stated that the term "Silver Mist" was not the nearest or most perfect description of the color of his company's particular grapefruit juice.

The witness Paul H. Ploeger, one of the partners of the appellant company, testified that he considered the word "Silver" to be descriptive of the color of grapefruit juice which his company sold.

Counsel for appellant also introduced into the record many trade-mark registrations containing the word "Gold" and "Golden," some of which were for oranges and grapefruit. In some of those trade-marks the term "Golden" was clearly not descriptive of the goods upon which that term was used. One of the registrations introduced into the record is "Golden Hill" for use on fresh citrus fruits, orange marmalade, and orange juice for food purposes. It was registered February 11, 1930, registration No. 267116.

It is the contention of counsel for appellant that the word "Golden" in the trade-mark "Golden Nip," and the word "Silver" in the trade-mark "Silver Nip," are merely descriptive of the goods upon which they are used; that such terms have become publici juris and that any one may use such terms in a trade-mark, so long as the

trade-mark in its entirety is not confusingly similar to marks previously used by others; and that appellant's "Golden Mist" trade-mark and its "Silver Mist" trade-mark are not confusingly similar to appellee's trade-marks "Golden Nip" and "Silver Nip" for use on identical goods.

■ We do not disagree with the contention of counsel for appellant that the words "Golden" and "Silver" in appellee's marks are merely descriptive of the goods upon which they are used by appellant. Nevertheless, we should consider the marks in their entireties and the fact that they are sold, apparently in the same stores, to those who, as a rule, considering the goods here involved, are not discriminating buyers, as was the case in our decision in the case of Philip A. Hunt Company v. Eastman Kodak Company, 140 F.2d 166, 168, 31 C.C. P.A., Patents, 852, 855, where it was held that "Kodalith" for use on "Photographic Developer" was not confusingly similar to "Graph-o-Lith" for use on goods possessing the same descriptive properties; that the suffix "Lith" was merely descriptive of the goods of the parties, and the prefixes "Koda" and "Graph-o" were sufficiently dissimilar so that confusion in trade would not likely occur. In that case we said, among other things, that "It appears from the record that the goods of the parties are used by those possessing technical skill in the lithographic art; that they are sold to a discriminating class of purchasers; and that they are not, and are not likely to be, sold either to amateur photographers or to the general public."

■ In the consideration of this case it should be understood that this is an opposition proceeding, not a cancelation proceeding brought by any prior user of the words "Golden" or "Silver." It may also be observed that appellant, who has disclaimed the words "Golden" and "Silver," may not attack the validity of appellee's trade-marks.

If confusion existed in the mind of the public because of the registration or use of marks confusingly similar to that of appellee, we should not allow appellant to add to the confusion by permitting the registration of marks which are confusingly similar to those of appellee.

It may be true that, if standing alone, the words "Mist" and "Nip" are not identical in appearance, meaning, or sound. It is true, however, that in consideration of the involved trade-marks we should not entirely exclude the words "Golden" and "Silver" but should, on the contrary, consider the marks in their entireties. Skelly Oil Co. v. Powerine Co., 86 F.2d 752, 24 C.C.P.A., patents, 790.

■ It appears from the record, and it is not seriously contended to the contrary, that appellee is not entitled to the exclusive use of the terms "Golden" and "Silver" in its trade-marks. However, although the words "Golden" and "Silver" may not be the dominant features of appellee's marks, we are of opinion that the terms "Mist" and "Nip," when used with the terms "Golden" or "Silver," are sufficiently similar so as to be likely to cause confusion or mistake in the mind of the public and to deceive purchasers as to the origin of the goods of the parties. See Kenosha Full Fashioned Mills, Inc., v. Artcraft Hosiery Company, 161 F.2d 751, 34 C.C.P.A., Patents, 1081.

As we said in the case of Skelly Oil Co. v. Powerine Co., supra [86 F.2d 754]: "A vast field of words, phrases, and symbols is open to one who wishes to select a trademark to distinguish his product from that of another. Unquestionably in our ever-increasing complex business life, the trend of modern judicial decisions in trade-mark matters is to show little patience with the newcomer who in adopting a mark gets into the border-line zone between an open field and one legally appropriated to another. As between a newcomer and one who by honest dealing has won favor with the public, doubts are always resolved against the former."

We have given careful consideration to all the arguments, as well as to the cases cited by counsel for appellant, but are of opinion that the tribunals of the Patent Office reached the right conclusion and, for the reasons hereinbefore stated, the decision of the Commissioner of Patents is affirmed.

Affirmed

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.