37 C.C.P.A. (Patents)

NESTLE'S MILK PRODUCTS, Inc. v. BAKER IMPORTING CO., Inc.
Patent Appeals No. 5655.

United States Court of Customs and Patent Appeals.

May 9, 1950.

Mock & Blum, New York City (Asher Blum, New York City, and Charles R. Allen, Washington, D. C., of counsel), for appellant.

Munn, Liddy & Glaccum, New York City (Sylvester J. Liddy and John H. Glaccum, New York City, of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Commissioner of Patents, 76 U.S.P.Q. 392, reversing the decision of the Examiner of Interferences sustaining appellant's notice of opposition[1] to appellee's application for registration of the notation "Hycafe" as a trade-mark for "coffee extract," and holding that appellee was entitled to register the mark under Section 5 of the Trade-Mark Act of February 20, 1905, 33 Stat. 725, 15 U.S.C. 85 [§ 1052].

It is alleged in appellee's application for registration that appellee has continuously used its mark on its goods since June 18, 1945.

In its notice of opposition dated October 27, 1945, appellant alleges that it is the owner of the trade-mark "Nescafe"; that it has used its mark on its goods since prior to June 18, 1945; that it "has extensively advertised and used the trade mark, Nescafe, for coffee extracts, coffee preparations and the like, exclusively prepared and sold" by it throughout the United States, and that "as a result of such use, said trade mark has become well known to the public and has attained a wide secondary meaning" as designating appellant's goods; that the trademark "Nescafe" is duly registered in the United States Patent Office and is now in full force and effect, unrevoked and uncancelled; that the goods upon which applicant claims use of its mark are identical with and of the same descriptive properties as those upon which opposer uses "Nescafe"; that the goods of applicant and those of opposer are sold in the same trade channels; that "Hycafe" so closely resembles "Nescafe" as to be likely to produce confusion and mis-

take in the minds of the public and to deceive purchasers, causing them to believe that applicant's goods have their origin with appellant; that the use and registration of the mark "Hycafe" by appellee will work irreparable injury to appellant's business, and that the use by appellee of the mark "Hycafe" on its goods will enable appellee to trade on and get the benefit of the reputation of appellant and its goods and lead the public to believe appellee and its goods are associated with the appellant.

In its answer dated January 15, 1946, appellee admits the registration by appellant of the trade-mark "Nescafe" and that the goods of the parties are of the same descriptive properties and are sold in the same trade channels. Appellee denies, however, that "Nescafe" has attained a secondary meaning as designating opposer's goods, that "Hycafe" so closely resembles "Nescafe" as to cause confusion or mistake in the mind of the public or to deceive purchasers into believing that his goods are associated with appellant. Appellee also alleges that the only similarity between the marks of the respective parties resides in the use of the descriptive word "cafe," which is disclaimed in appellee's application, and that the word "cafe" is now and has for many years prior to the alleged date of adoption of the trade-mark "Nescafe," meant to the trade and the purchasing public generally a coffee product, and has been used by the trade generally in combination with distinctive designation to define a concentrated coffee product.

Both parties filed briefs and were present at the oral argument. Appellant alone took testimony.

The sole issue presented by the record is whether or not the marks are confusingly similar within the meaning of the Trade-Mark Act of 1905.[2]

---

1. Sec. 6, Trade-Mark Act of 1905, 33 Stat. 726, 15 U.S.C. § 86 [§§ 1062, 1063] provides: " * * *. Any person who believes he would be damaged by the registration of a mark may oppose the same by filing notice of opposition, stating the grounds therefor, in the Patent Office within thirty days after the publication of the mark sought to be registered, * * *."

2. Sec. 5, Trade-Mark Act of 1905, 33 Stat. 725, 15 U.S.C. § 85 [§ 1052] provides: "That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark * * *.

* * * * * * * *

The examiner conceded that "cafe" is the French equivalent of "coffee" and would thus have, when applied to coffee products, a descriptive significance to persons familiar with the French language, but considered that purchasers not so informed would regard the term as distinctive when applied to such products. Considering the terms "Nescafe" and "Hycafe" in their entireties, he held that despite the difference between the prefixes "Nes" and "Hy," the marks so resemble each other as to be likely to cause confusion in trade. Thus, he sustained the opposition.

The commissioner thought that "cafe" though of French derivation had become an accepted word of the English language designating either coffee or an establishment for serving refreshments, and quoted Webster's New International Dictionary as follows:

"1. Coffee.

"2. A coffeehouse; a room for coffee and light refreshments; a restaurant; formerly, in the United States a barroom."

Webster's New International Dictionary, Second Edition, 1934 (1949 reprint), however, indicates [3] that "cafe" is a French word meaning "coffee," and when used not as a foreign word (not italicized) means "A coffeehouse, etc." That dual nature of the word, as a French term for coffee, or as an English term for restaurant or coffeehouse, is corroborated by the Oxford "A New English Dictionary," Vol. II, 1893,[4] and is not changed by the supplemental volume with new and additional meanings of words, published in 1933. Funk & Wagnalls "New Standard Dictionary," 1942, identifies [5] the word "cafe" as a foreign word (French) whose most common and important meaning is "A coffee-house, refreshment-room, or restaurant" with a less common meaning as "coffee." Words and Phrases states,[6] "The word 'cafe' as ordinarily and popularly used means a restaurant or house for refreshments. Proprietors' Realty Co. v. Wohltmann, 95 N.J.L. 303, 112 A. 410."[7]

We must disagree with the commissioner's statement that "cafe" has become an accepted word of the English language designating coffee. The dictionaries make it manifest that only as a foreign language term (French) does *cafe* mean coffee.

"*Provided*, That trade-marks * * * which so nearly resemble a registered or known trade-mark, owned and in use by another, and appropriated to merchandise of the same descriptive properties, as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers, shall not be registered: * * *."

3. " ‖ca′fé′ (kả′ fā′), *n.* [F. fr. It. *caffè*. See COFFEE.] 1. Coffee. 2. [*not italic*] (*pron.* kả fā′) A coffeehouse; a room for coffee and light refreshments; a restaurant; formerly, in the United States a barroom."
   "Explanatory Notes," p. xcv: "52. *Foreign Words* are indicated by prefixed parallel bars: * * * These are terms that occur frequently enough in speech and print to require definition in a Dictionary of English, but the retention of a purely foreign pronunciation, and the fact that they are generally printed in italic type, fix their status as foreign."

4. "‖Cafe (ka fe). [Fr. *café* coffee, coffee-house.] A coffee-house, a restaurant; strictly a French term, but recently introduced in this country for the name of a class of restaurant."

"List of Abbreviations, Signs, etc.," Vol. II, p. x: "‖=not naturalized."

5. "ca″fé′, 1 ka″ fē′; 2 cä″fẹ′ *n.* [F.] 1. A coffee-house, refreshment-room, or restaurant; sometimes [U. S.] a barroom. 2. Coffee. * * *"
   "X. Characterization of Words" p. xviii: "* * * The definitions of foreign words that retain their original form and are always spoken with their original pronunciation are preceded by the abbreviated name of the language from which they were taken; as [F.] French * * *."
   "IV. The Definitions." p. xiii: "* * * If a word has two or more meanings, the most common meaning has been given first. * * * nothing has been permitted to stand between the vocabulary word and its most obvious and important current meanings."

6. 6 Words and Phrases, Perm.Ed., p. 4.

7. To the same effect, 6 Words and Phrases, Pocket Part, citing In re Bowers, D.C.Cal., 33 F.Supp. 965, 966.

That, however, does not invalidate the commissioner's conclusion that "cafe" has descriptive significance relating to coffee. Foreign language words, not adopted into the English language, which are descriptive of a product, are so considered in registration proceedings despite the ·fact that the words may be meaningless to the public generally. In re Northern Paper Mills, 64 F.2d 998, 20 C.C.P.A. Patents 1109, and cases cited; Walgreen Co. v. Godefroy Manufacturing Co., 74 F.2d 127, 22 C.C.P.A. Patents 818.

Appellant's label, Exhibit 3, appears to bear out the descriptive nature of "cafe" in the statement there set forth, as follows:

"A cup of Nescafe, made according to directions, is a cup of full-flavored, full strength coffee with added carbohydrates. "The carbohydrates (dextrins, maltose and dextrose) are added for the sole purpose of protecting the natural flavor of the freshly-roasted, freshly-brewed coffee. They are not a coffee substitute, nor do they diminish the coffee's flavor, strength or stimulation. In Nescafe you get all the flavor, all the 'lift' of really fine coffee."

Further showing that appellant recognizes "cafe" as meaning "coffee" is appellant's Exhibit 8, used in its advertising, which states:

"'Nescafe certainly makes a grand cup of coffee' * * * *makes it every time. You'll want a second cup and can have it so-o easily.* (Italics quoted.)

\* \* \* \* \* \*

"A quick cup of Full Flavored Coffee— that's Nescafe."

It must be recognized that both marks, "Nescafe" and "Hycafe," consist of a foreign term, admittedly descriptive of the product to which the marks are applied, coupled with a prefix. The registrations to appellant, 364,017 and 379,117, are for the entire trade-mark "Nescafe." In appellee's application for registration of "Hycafe," "cafe" is disclaimed apart from the combination shown.

■ The likelihood of confusion in the mind of the public as to origin of the goods it purchases because of the similarity of the marks is, of course, the test applied by this court in opposition proceedings, Standard Laboratories, Inc., v. Proctor & Gamble.Co., 167 F.2d 1022, 35 C.C.P.A. Patents 1146, as well as by other courts in trade-mark infringement and unfair competition actions, Best & Co. v. Miller, 2 Cir., 1948, 167 F.2d 374, 376. The marks considered in their entireties must be considered, Yeasties Products, Inc., v. General Mills, 77 F.2d 523: 22 C.C.P.A. Patents 1215, Miles Laboratories v. Foley & Co., 144 F.2d 888, 32 C.C.P.A. Patents 714; Apollo Shirt Co. v. Enro Shirt Co., Inc., 165 F.2d 469, 35 C.C.P.A. Patents 849. In considering contested marks in their entireties, the court may notice the descriptive as well as disclaimed portions despite the rule that the validity of registered marks which are merely descriptive is not to be challenged in opposition proceedings, West Disinfecting Co. v. Lan-O-Sheen Co., 163 F.2d 566, 35 C.C.P.A. Patents 706. A descriptive word, having little trade-mark significance, will not be regarded as the dominant part of a mark, Atlantic Seafood Packers v. Florida Fruit Canners, Inc., 166 F.2d 586, 35 C.C.P.A. Patents 985; National NuGrape v. Judge & Dolph Ltd., 154 F.2d 521, 33 C.C.P.A. Patents 1032; Miles Laboratories, Inc., v. Foley & Co., supra.

■ In the instant case, we consider "cafe" to be a descriptive term as applied to a coffee product. The balance of the marks, "Nes," and "Hy," are suggestive of the Nestle's Milk Products Company and the Hygrade Food Products Corporation (the parent company of appellee herein), respectively, producers of the products to which the contested marks are applied. They are not similar, and, considering the marks "Nescafe" and "Hycafe" in their entireties, we do not find grounds for disagreeing with the commissioner's decision that their concurrent use would not be likely to cause confusion in the trade.

The decision appealed from is affirmed.

Affirmed.

O'CONNELL, Judge (dissenting).

Appellee has offered no evidence and the record points clearly to appellee's adoption of its mark with the knowledge of appel-

lant's rights and with the studied purpose to profit by the good name and the earned good will built up by appellant at great expense over a period of years.

It has been conceded that appellant is the owner and for years prior user of two registrations of "Nescafe," dated January 17, 1939, and July 2, 1940. Those registrations were for use on coffee, coffee extracts, decaffeinated coffee preparations, and the like. Appellee's application for the registration of "Hycafe" was filed June 30, 1945, alleging continuous prior use thereof for coffee extract since June 18, 1945. That use was for a period of twelve days.

The decision of the majority holds that considering the marks "Nescafe" and "Hycafe" in their entireties they are not similar and their concurrent use would not be likely to cause confusion. It is impossible to accept that conclusion. "Nescafe" and "Hycafe" consist of but one word, each having three short syllables, two of which are not only similar but identical.

It is not the word "cafe" that makes appellee's mark objectionable. It is the lack of distinctiveness by which the diminutive "Hy" obscures any difference at all between the contested marks. In fact, it would seem that so far as appellee is concerned, whatever difference there is between appellee's mark and that of appellant was wholly unintentional.

The owner of appellee's mark is the Baker Company and not the Hygrade Company whose name is printed on the mark. In thus assembling "Hycafe" as a trade-mark for use on its goods, appellee, the junior party, has introduced a feature of duplicity whereby confusion is likely to result as to just which of the two companies named in the mark "Hycafe" is the actual vendor of the merchandise to which the mark is attached.

The mark "Hycafe" also bears the identical notation on its face that was previously and continuously used on labels and in the widely circulated advertising of appellant to the effect that the involved product was a powdered coffee extract with added dextrins, maltose, and dextrose.

"Hygrade" is a phonetic spelling of the descriptive adjective "high-grade," which means of a grade rated as superior. It is also noted that "Hy" is susceptible to interpretation as an abbreviation for the hydrates with which the cafe is blended. In either event, "Hycafe" is merely descriptive of the character and quality of the goods to which the mark is attached.

Appellant took testimony for the purpose of showing that prior to appellee's entry into the field in 1945, appellant had already spent approximately $1,250,000 in advertising its product through radio and other mediums of attracting the purchasing public, including numerous national magazines, such as Life, Look, Ladies Home Journal, McCall and such newspapers as the New York Daily News and the Philadelphia Enquirer; and that as a result of such advertising and the quality of its product, appellant built up good will in its trade-mark "Nescafe" having an enormous value on a national scale.

The record also discloses that in 1945 when the temporary period ended during which the Armed Forces had taken all of the product made by appellant, appellant launched another widely-circulated advertising campaign among grocers to revive its business by announcing to them with large and striking display that "Nescafe Is Here Again." About that time appellee likewise launched its entry into the field with the use of the mark "Hycafe." Appellee has submitted no testimony to the effect that it has spent anything in the marketing of its product.

The Circuit Court of Appeals has noted that at one time courts were remarkably generous in extending boundaries of the monopolies created by registered marks but today the tendency is to be somewhat less generous. Eastern Wine Corporation v. Winslow-Warren, Ltd., Inc., 2 Cir., 137 F. 2d 955. The Court of Customs and Patent Appeals has uniformly treated each case as subject to determination in accordance with the particular facts presented.

The history of this court discloses, however, that a newcomer seeking to register a mark of doubtful qualification, upon which no investment whatever has been shown in connection with its prior use, has not been

afforded a refuge for piracy here through registration as against the owner of a mark who has spent over a million dollars in its promotion.

The decision of the majority, in effect, has applied the rule of caveat emptor—let the buyer beware—to the sale of an every day household article. The fallacy of the decision is that "cafe" is descriptive and every one is free to use the term as a trademark without the necessity of also selecting an additional and differentiating term that will clearly distinguish the owner's product from that of the appellant. Lactona, Inc., v. Lever Brothers Co., 144 F.2d 891, 32 C.C.P. A. Patents 704, 708.

The late Judge Hatfield in the case of Atlantic Seafood Packers v. Florida Fruit Canners, Inc., 166 F.2d 586, 589, 35 C.C.P. A. Patents 985, quoted the following generally accepted doctrine which is here applicable to the point in question: "A vast field of words, phrases, and symbols is open to one who wishes to select a trade-mark to distinguish his product from that of another. Unquestionably in our ever-increasing complex business life, the trend of modern judicial decisions in trade-mark matters is to show little patience with the newcomer who in adopting a mark gets into the border-line zone between an open field and one legally appropriated to another. As between a newcomer and one who by honest dealing has won favor with the public, doubts are always resolved against the former."

The decision of the majority represents a departure from the application of the doctrine hereinbefore described. Surely, the court by its decision does not intend to set up a new tower of Babel in the field of trade-mark law. However, the decision is susceptible to that interpretation and is bound to be hailed with delight throughout all hucksterdom.

Appellant has been a pioneer in the introduction and use of the mark "Nescafe" in the sale of powdered coffee or cafe, instantly soluble in a cup of hot water, which has proved a godsend to the maddening throngs who have to punch a time clock. The name has significance as a symbol of the product and not as a family name.

Upon the record, it is impossible to escape the conclusion that appellee's adoption and peculiar use of "Hycafe" as a trade-mark was to serve the purpose of simulation and to draw to itself the reputation and good will of the appellant corporation.

In view of that conclusion, and in view of the doubt created by the sound and honest conviction expressed in the decision of the Examiner of Interferences holding that the involved marks are confusingly similar, the decision of the Commissioner of Patents should be reversed.